## Iowa-Illinois Gas and Electric Company, Plaintiff-Appellee, v. George R. Perrine et al., Defendants-Appellants.

### Gen. No. 10,684.

Opinion filed July 15, 1953. Rehearing denied October 6, 1953. Released for publication October 6, 1953.

LATHAM CASTLE, Attorney General of State of Illinois, of Chicago, for appellants; HARRY R. BEGLEY, Special Assistant Attorney General, ELLIS AMES BALLARD, and JAMES THOMSON OTIS, all of Chicago, of counsel.

OAKLEAF & CHURCHILL and ANDREW KOPP, of Moline, ROBERT EAGLE and SAMUEL GILMAN, of Rock Island, and STEWART & LYTTON and F. JOSEPH RYAN, of East Moline, for intervenors-appellants.

CHARLES H. WHITMORE and DEAN R. STICHNOTH, of Rock Island, and ROBERT G. GRAHAM, of Moline, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On October 30, 1952, the plaintiff, an Illinois Corporation engaged in furnishing gas and electric service in the cities of Rock Island, Moline, East Moline and in various Iowa cities and in certain rural areas in both Illinois and Iowa, filed with the Illinois Commerce Commission its schedule No. 2, asking that its electric rates be increased to take effect on December 1, 1952. On November 18, 1952, the Commission entered an order setting the rates down for hearing on December 9, 1952, and suspending the effectiveness of the proposed rates until March 29, 1953. On November 21, 1952, the plaintiff filed its motion requesting that the Commission enter an order that the rates set forth in schedule No. 2 be made effective at once as temporary rates and be kept effective until a final determination is made by the Commission of proper and reasonable rates to be charged by the plaintiff.

On January 5, 1953, the instant verified complaint was filed by the plaintiff, Iowa-Illinois Gas and Electric Company, in the circuit court of Rock Island county making the members of the Illinois Commerce Commission and the Attorney-General of Illinois defendants. The complaint prayed for a temporary injunction restraining the defendants (a) from enforcing any of the provisions of the suspension order entered by the Commission on November 18, 1952; (b) from interfering in any way with plaintiff's charging and collecting the rates for electric service set out in its schedule No. 2; (c) from instituting any proceedings to enforce the suspension order issued by the Commission on November 18, 1952; and (d) from taking any steps or instituting any suits to impose fines upon, or recover penalties from, plaintiff because of its failure to charge the rates set forth in its previous rate schedule No. 1 or its action in charging and collecting, after the issuance of a temporary injunction, of its

rates set forth in its schedule No. 2. The complaint concluded by praying that upon a final hearing the temporary injunction be made permanent.

Accompanying the complaint were copies of the proposed rate schedule No. 2 filed with the Commission by the plaintiff on October 30, 1952, the suspension order issued by the Commission on November 18, 1952, the motion filed by the company with the Commission on November 21, 1952, for temporary rates and, also, a copy of plaintiff's rate schedule No. 1. On January 5, 1953, plaintiff filed its motion for a temporary injunction, and in support of that motion, the affidavits of its vice president in charge of operations, of Charles H. Bartlett and Peter Antonelli, engineers, of Paul Grady and S. Lloyd Nemeyer, public accountants, and of R. Harvey Tinsman, secretary-treasurer of plaintiff, were filed.

On January 9, 1953, the defendants entered their special and limited appearances and moved the court to change the venue of the action to either the circuit or superior court of Cook county or to the circuit court of Sangamon county because none of the defendants resided in Rock Island county and because no part of the transaction, out of which the alleged cause of action arose, had occurred in Rock Island county. This motion, after hearing, was denied.

Leave was thereafter granted Moline Consumers Company, Le Claire Hotel, Inc., Eagle Signal Corp., Frank Foundries Corp., and Moline Iron Works to intervene, and on January 15, 1953, the verified joint-answer of the defendants to the complaint was filed and also a reply to the motion of the plaintiffs for a temporary injunction was filed, together with affidavits of Fred Kleinman, Chief of Accounts and Finance of the Illinois Commerce Commission, Herbert Johnson, an economist on the staff of the Illinois Commerce

199

Commission, James J. Danaher, Cyrus J. Colter, J. G. Van Keuren, and Dale E. Sutton, members of the Commission, and Milton Mallin, assistant Attorney General of the State of Illinois. Subsequently other parties intervened by leave of court, additional affidavits were filed, and on February 19th and 20th, 1953, hearings were had upon the application of the plaintiff for a temporary injunction and, from an order entered on February 27, 1953, granting a temporary injunction as prayed, this appeal is prosecuted.

It is first contended by appellants that the circuit court of Rock Island county did not have jurisdiction to hear and determine this case and erred in denying their motion to transfer it to the circuit court or superior court of Cook county or to the circuit court of Sangamon county. The Civil Practice Act (Ill. Rev. Stat. 1951, chap. 110) sec. 7 [1951; Jones Ill. Stats. Ann. 104.007] provides that every civil action shall be commenced in the county where one or more defendants reside or in which the transaction or some part thereof occurred out of which the cause of action arose. Counsel insist that none of the defendants reside in Rock Island county and that the transaction out of which this cause of action arose took place either in Sangamon or Cook county.

The action which initiated this proceeding was the filing by appellee of the proposed increased rate schedule No. 2 on October 30, 1952. While this schedule was filed by appellee with the Commission in Sangamon county and although the hearings upon plaintiff's motion that the rates set forth in that schedule be made effective immediately as temporary rates were had in either Sangamon or Cook county, it does not follow that the transaction out of which the controversy arose occurred only in Sangamon county or Cook county.

*Smith v. Williams,* a Florida case, reported in 35 S. (2d) 844, involved an order entered by the Florida Industrial Commission affecting the personal and property rights of operators of private employment agencies located in Dade county, Florida. It was an original prohibition proceeding filed in the Supreme Court of Florida by members of the Industrial Commission of that State against Ross Williams, a judge of the circuit court in and for Dade county, Florida, seeking to prohibit him, as such judge, from entertaining a suit brought in that county. The suit which the members of the Commission sought to prohibit the Dade county circuit court from entertaining was filed in the circuit court of that county by several owners and operators of private employment bureaus which were operating under licenses issued to them by the Commission. The object sought was a declaratory decree declaring invalid a certain resolution and rules which the Commission had adopted and of which the plaintiffs had been advised by the Commission that if they did not conform thereto they would be prosecuted and their licenses revoked. The complaint also prayed for an injunction restraining the Commission from enforcing said resolution and rules. The circuit court of Dade county assumed jurisdiction, granted a preliminary injunction, which it refused to dissolve, and ruled the Commission to answer the cause within thirty days. It was then that the Commission instituted the instant proceeding in the Supreme Court.

It was the contention of the Commission that the circuit court of Dade county was not vested with jurisdiction to hear the injunction proceedings, inasmuch as the order of the Commission was entered at Tallahassee, in Leon county, where it had its official residence and chief headquarters. In dismissing the prohibition proceeding and holding that venue was

properly laid in Dade county, the court stated that there were two types or classes of cases in which rules and regulations promulgated by state agencies may be brought into question in suits properly instituted for such purpose and that the proceeding pending in Dade county circuit court sought to obtain direct judicial protection from an unlawful invasion of the constitutional rights of the plaintiff within the county where the suit was instituted. The court then stated: "In the proceeding at bar it is shown that the plaintiffs maintain places of business in Dade County. Their personal and property rights are directly threatened with the infringement or curtailment in Dade County by the enforcement there of rules promulgated by the Florida Industrial Commission which are asserted by the plaintiffs to be unconstitutional and in direct violation of the statute conferring the rule-making power on the Commission with respect to the business of the plaintiffs in Dade County sought to be regulated. Whether the plaintiffs are correct in their contention that their constitutional rights in Dade County are being or will be unlawfully invaded by the enforcement of rules promulgated by the Commission is not before us for determination. Whatever the true facts may prove to be, the plaintiffs do have the right to have this question presented by their bill judicially determined in a suit instituted for that purpose in the jurisdiction where the alleged wrong is threatened and to seek to have relief from the operation of unconstitutional acts of the Commission which may be shown to have been committed in that jurisdiction."

In *Montana-Dakota Utilities Co. v. Public Service Commission of Montana* [111 Mont. 78], reported in 107 P. (2d) 533, it appeared that the plaintiff was engaged in furnishing natural gas to consumers in Valley and Phillips counties, Montana. The Public Serv-

ice Commission of that State had, after hearings, entered an order reducing gas rates in the territory served by the plaintiff, and the plaintiff, deeming the order unlawful and unreasonable, instituted the instant proceeding in Lewis and Clark county against the Commission seeking to enjoin the enforcement of that order. The Commission sought to have the proceeding transferred to Valley county or to Phillips county on the ground that the cause of action arose in those counties and no part thereof arose in Lewis and Clark county. The trial court denied the motion of the Commission for a change of venue, and the Commission appealed. The Supreme Court reversed the order of the trial court denying the motion of the Commission for a change of venue, and in its opinion referred to the appropriate section of the Montana Code which provides that certain actions must be tried in the county where the cause, or some part thereof, arose and stated that the contention of the plaintiff to the effect that the order of the Commission of which it complains was entered in Lewis and Clark county where the office of the Commission is located and, therefore, that county had jurisdiction loses sight of the real cause of action. The court then said: "The cause of the action is the threatened enforcement or operation of the order in Valley and Phillips counties. It is not the mere making of the order, but the place where it is put in operation, that determines where the cause of action arose. Operation of the order is what is alleged will injure plaintiff. . . . It is the operation of the order that the action seeks to enjoin. True, the complaint also seeks to set aside the order, but only because its operation allegedly would injure plaintiff by confiscating its property. The operation of the order will be accomplished, if at all, in Valley and Phillips counties where the order is made applicable. It is our

view that the cause of action arose in Valley and Phillips counties and not in Lewis and Clark county."

The matter complained of in the instant proceeding is the enforcement by the Commission of its suspension order of November 18, 1952, and the refusal of the Commission to enter an order in conformity with the motion of appellee of November 21, 1952, requesting that its proposed rate schedule No. 2 become effective immediately. The purpose of the instant proceeding is to prevent confiscation of plaintiff's property used by it in rendering electric service to its customers residing in Illinois and largely in Rock Island, Henry, and Whiteside counties. The parties vitally interested in having rate schedule No. 1 continued in force and rate schedule No. 2 suspended were the customers of the plaintiff residing in those counties. The plaintiff's properties are there located, and in those counties are the places where the plaintiff and its customers transact their business. According to the complaint, its properties in those counties are threatened with confiscation if the Commission interferes with the collection of the rates set forth in schedule No. 2. The order of the Commission suspending the operation of that schedule took effect and became effective where appellee's property, business, and customers were located. In our opinion the circuit court of Rock Island county had jurisdiction to hear and determine this proceeding and the chancellor did not err in denying appellants' motion to transfer the cause to another county. See also *Cecil v. Superior Court in and for Los Angeles County,* 59 Cal. App. (2d) 793, 140 P. (2d) 125.

Counsel for appellant insist that the office of a temporary injunction is to maintain the status quo until a hearing can be had upon the merits of a controversy, and insist that the order entered in this cause is a tem-

porary mandatory injunction, the effect of which was not to maintain the status quo but to fix the electric rates the company was permitted to charge. Counsel further contend that the chancellor lacked jurisdiction to issue the order appealed from inasmuch as the instant complaint was filed in the circuit court before the Commission had acted upon the Company's request for a temporary increase of rates, and further that the showing made by appellee does not disclose a case of confiscation.

It was the contention of appellee before the chancellor and it is insisted by its counsel in this court that the Commission was guilty of unreasonable arbitrary and capricious conduct in failing to act upon appellee's motion for temporary rates; that the effect of the act of the Commission in suspending the operation of rate schedule No. 2 is to confiscate appellee's electric properties in Illinois; that the appeal provisions of the Illinois Public Utilities Act do not afford appellee an adequate remedy and that the losses resulting to appellee from a continuation of its operations under rate schedule No. 1 are irreparable.

██ In *Peoples Gas Light & Coke Co. v. Slattery,* 287 Ill. App. 379, the court said (p. 389) that as a general rule a preliminary mandatory injunction will not be awarded yet in a proper case the issuance of such an injunction may be the only effective remedy. Whether the temporary injunction awarded in the instant case was proper or justified must be determined from a consideration of all the facts disclosed by the verified pleadings, accompanying affidavits, and the records in this court of which we take judicial notice. (*Blyman v. Shelby Loan & Trust Co.,* 382 Ill. 415, 419; *In re O'Malley,* 404 Ill. 257, 258.)

The record in *Iowa-Illinois Gas and Electric Co. v. Fisher,* Gen. No. 10626 [351 Ill. App. 215], pending in

this court and of which we take judicial notice, and the record in the instant case disclose that on August 7, 1951, appellee was cited to appear before the Commission to show whether its rates under schedule No. 1 did not return to the utility a profit in excess of a just and reasonable return. In response to that citation hearings were had and various data were furnished the Commission by the utility to justify its rates. On March 26, 1952, the Commission advised the utility that it proposed to enter a temporary order requiring a reduction of rates and on April 10, 1952, entered an order directing the utility to effect a temporary reduction in its gas and electric rates to the Illinois public for a nine-month period beginning June 1, 1952. Upon the complaint of the utility filed on April 18, 1952, a temporary injunction was issued by the circuit court of Rock Island county on May 29, 1952, restraining the Commission from enforcing this temporary rate order. To reverse that order an appeal was prosecuted to this court and an opinion in that case is this day filed.

Thereafter and on October 30, 1952, the utility filed with the Commission its rate schedule No. 2, effective December 1, 1952, which increased its electric rates. The Commission promptly suspended the operation of the proposed rates until March 29, 1953. The utility promptly filed its motion requesting the Commission to enter an order making these rates set forth in schedule No. 2 effective at once as temporary rates until a final determination is made by the Commission. Hearings were had ending on December 19, 1952. The enforcement of the order of the Commission entered on April 10, 1952, directing the utility to effect a temporary reduction in its rates had been enjoined. The increased rates provided for in schedule No. 2 had been suspended by the Commission. No ruling had been made by the Commission upon the motion of the utility

that rate schedule No. 2 become effective as temporary rates immediately. This was the status of the proceedings before the Commission at the time the instant complaint was filed.

In granting the order appealed from, the chancellor stated that the Company's application for a temporary injunction was not predicated on the theory that the court had the power to make new rates but upon the failure of the Commission to promptly act. The chancellor recognized that the Legislature had vested in the Commerce Commission the exclusive function of fixing just and reasonable rates of public utilities; that the orders of the Commission are entitled to great weight and are presumed to be valid and when the sufficiency of an order of the Commission is questioned it will not be set aside unless it is clearly against the weight of the evidence, is arbitrary or unreasonable, or is in clear violation of a rule of law. The chancellor referred to and commented upon *Illinois Bell Tel. Co. v. Illinois Commerce Commission*, 414 Ill. 275; *Peoples Gas, Light & Coke Co. v. Slattery*, 373 Ill. 31; *Sprague v. Biggs*, 390 Ill. 537; *Public Utilities Commission v. Springfield Gas and Electric Co.*, 291 Ill. 209; and *Banton v. Belt Line Ry. Corp.*, 268 U. S. 412, and held that the suspension of the operation of rate schedule No. 2 and the delay of the Commission to act upon appellee's motion that rate schedule No. 2 be put into effect at once as temporary rates and kept effective until a final determination by the Commission was unreasonable and results in the confiscation of the plaintiff's property. The chancellor also held that the plaintiff had no adequate remedy under the appeal provisions of the Illinois Public Utilities Act and was therefore entitled to a temporary injunction.

█ It is insisted by counsel for appellants that inasmuch as appellee filed its instant complaint before

207

the Commission had acted upon its motion for a temporary rate increase, equity had no jurisdiction to act as the plaintiff had not exhausted its remedies before the Commission. Counsel recognize the rule laid down in *Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, and *Sprague v. Biggs,* 390 Ill. 537, to the effect that when the legislative process of rate-making is ended and the rate in force becomes confiscatory and adequate means under the administrative provisions of the Public Utility Act or the manner of administering such means is inadequate to prevent confiscation, then a court of equity has jurisdiction to remedy the wrong in an independent proceeding. Counsel insist, however, that in those cases it appeared that the Commission had denied the motion of the Utility for a temporary rate increase, while in the instant case the Commission had not acted upon appellee's motion for a temporary increase in rates. Counsel overlook the fact that the result to appellee, of the Commission's failure to act upon its motion in the instant case for a temporary rate increase was just as deadly, if it was true that its property was being confiscated if it was compelled to continue to charge the rates provided in schedule No. 1, as if the Commission had entered a formal order of denial.

In our opinion the fact that no formal order had been entered by the Commission holding the old rate adequate or the new rate excessive or denying the Company's motion for temporary rates did not preclude the Company from instituting the instant proceeding. As said in *Smith v. Illinois Bell Telephone Co.,* 270 U. S. 587, 70 L. Ed. 747, 46 S. Ct. 408 quoted in *Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, at p. 45: " 'Property may be as effectively taken by long continued and unreasonable delay in putting an end to confiscatory rates as by express affirmance of

them, and where, in that respect, such a state of facts is disclosed as we have here, the injured public service company is not required indefinitely to await a decision of the rate-making tribunal before applying to a Federal court for equitable relief.'" Mr. JUSTICE GUNN at page 46 of the opinion in *Peoples Gas Light & Coke Co. v. Slattery, supra,* then continued: "The question of confiscation is a judicial one (citing cases) and courts of equity of the State of Illinois, under the constitution, have no less power than the courts of equity of the United States in determining this question." The Commission had had the rates of appellee under consideration for seventeen months—from August 7, 1951, to January 5, 1953. During this period of time innumerable hearings had been had. On January 5, 1953, the motion of appellee of November 21, 1952, for temporary rates had neither been granted nor denied, although the hearings had been concluded on December 19, 1952. Under the facts as they appear in the record, we conclude that appellee was justified in applying to the chancellor for equitable relief.

Now, as to the merits of this controversy: Appellee insists that the enforcement of the rates in schedule No. 1 had the effect of confiscating, day by day, its Illinois property and unless it is permitted to charge higher rates, losses caused by such daily confiscation will continue, and such losses can never be recovered. The essence of plaintiff's complaint is that the rate it was charging under schedule No. 1, then in effect, provided revenue so insufficient that after the payment of all necessary operating expenses, including a proper allowance for depreciation, the Company did not earn, on the fair value of its property used to furnish electric service, a sufficient rate to prevent confiscation of its property.

The result brought about by this injunction is clear. The rates under schedule No. 1 became ineffective. The substantially higher rates under schedule No. 2 became effective. The rates which intervenors and all other customers of the Utility must pay on meter readings taken on and after February 27, 1953, will result in increasing the annual revenue of the company $357,303. It should not be overlooked that the Commission had, on April 10, 1952, determined that even the lower rates provided in rate schedule No. 1 were too high and had directed the Company to file rate schedules which would reflect an annual reduction in its gross revenue of $520,000, which reduction was to become effective with meter readings on June 16, 1952. Nor should it be forgotten that on November 18, 1952, the Commission issued its suspension order suspending the operation of the rates which the Utility is now, because of the order involved in this appeal, permitted to charge.

 This court, upon this record, is not confronted with the question whether the rates involved in schedule No. 1 are or are not reasonable. Appellee, in setting the machinery of the circuit court in motion, alleged in its complaint that the rates in schedule No. 1 were confiscatory and it had the burden of sustaining that allegation. Nor is this court concerned with just what formula or with just what elements the Commission considered in arriving at the several orders which it entered. The true inquiry in this case is, as stated in *Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31 at page 54, whether upon the real value of the properties of appellee, the rate the Commission authorized the Company to charge produces confiscation of appellee's property by allowing it an inadequate return. The fact that the Commission may not have considered proper elements in arriving at a true

value does not necessarily mean that the rate author-
ized by the Commission is incorrect or confiscatory.
(*Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31.)
In the same case which was a confiscation case, the
court said: (P. 68) "The question presented in this
record is whether a net return of five per cent consti-
tutes confiscation or, in other words, deprives the com-
pany of its property without due process of law, and
this is a different question than determining a just
and reasonable return upon property used and useful
in the utility business. It has been held that a reason-
able rate is something other or higher than one not
strictly confiscatory, the difference, if any, being de-
termined with finality by the appointed officers of the
State."

In the instant case appellee in its pleadings and affi-
davits has set out the fair value of its electric proper-
ty at $26,710,970; that its rate of return under the
present schedule is 2¾% of that value; that the trend
of its earnings has been downward in recent years;
that its return is lower than that of other utilities;
that the same capital otherwise invested would produce
a return of at least 6% and that the lowest non-confis-
catory rate of return for appellee's electric business
should be at least 6%. The answer and affidavits filed
on behalf of the Commission set out that the value of
appellee's electric property is $17,605,709; that its
return is 5.18%; that the same amount of capital other-
wise invested would produce a return of 4.2%; that the
return which appellee is receiving is higher than other
utilities in this State; that the reason for this is that
other utilities voluntarily reduce their rates; that ap-
pellee has not reduced its rates; that appellee pays an
excess-profits tax, has an excellent market for its
stocks and that its property is not being confiscated.

The pleadings and affidavits filed on behalf of the Commission disclose that from January 1942, to October 1952, appellee's capitalization increased from $30,265,173 to $63,269,006; that appellee's books are kept in accordance with the uniform system of accounts prescribed by the Commission and conform to the system of accounts prescribed by the Federal Power Commission and is similar to the system of accounts prescribed by practically all of the state public utility regulatory commissions in the United States; that for the twelve months ending October 31, 1952, appellee's operating revenues from its Illinois electric business, as shown by its books were $5,632,516.02; that the total operating revenue deductions, on said business, per books, including depreciation expense was $4,550,-518.81, the difference being $1,081,997.21, or a return of 4.05% on the $26,710,970 valuation placed upon its electric properties by the verified pleadings and affidavits of the utility. The books of appellee show an annual depreciation expense of $587,567.19, while the accountants for appellee insist that this depreciation expense should be $937,567. This difference, together with the difference between the valuation put on appellee's electric properties by the Commission and the valuation put on the same property by appellee, accounts for the variation in the percentages of return arrived at by the accountants representing the parties to this proceeding.

■ Admittedly, a return which does not produce income sufficient to meet operating expenses is confiscatory, and rates yielding a very narrow margin above operating expenses may be confiscatory. (*People v. Finnegan,* 393 Ill. 562, 565.) There is a marked difference between the level of just and reasonable rates and the level of confiscatory rates. (*Utilities Commission v. Springfield Gas Co.,* 291 Ill. 209, 217.) In

212

the instant case, appellee's books show, and its pleadings admit, a profit of $1,081,997.21 on its Illinois electric business for the twelve-month period ending October 30, 1952, which is a return of 4.05% on $26,710,970 which is appellee's own allegation of the present fair value of its Illinois electric properties and a return of 5.81% on the actual original cost of its properties less depreciation.

The instant case was heard by the chancellor upon the verified pleadings and affidavits. The record consists of 404 typewritten pages. We have read the record as abstracted and have consulted the record. The transcript of the testimony heard by the Commission on December 8, 9, 11, 12, 15, 16 and 19, 1952, covered 1,175 typewritten pages and 46 exhibits were received in evidence which contained approximately 1,000 pages of statistical data. We recognize the importance of this case, not only to the several parties to the record but to all the many customers of appellee.

There are many things shown by the record to which we have not referred. It appears that appellee's overall profits on its gas and electric business for the twelve months ending October 31, 1952, were $4,041,995; that for the year 1951, appellee paid an excess-profits tax of $214,000 and for the ten-month period ending October 31, 1952, appellee paid an excess-profits tax of $251,000. It further appears that appellee has earned a higher rate of return on its business as a whole than any other comparable gas or electric utility in Illinois, and that seventeen days after the instant complaint was filed appellee sold to underwriters $8,000,000 of first mortgage bonds and $6,000,000 of preferred stock; that the current market value of appellee's common stock is approximately twice the book value of that stock, and that as late as December 1, 1952, appellee

paid its regular quarterly dividend of 45 cents · per share on 1,909,003 shares of its common stock.

In its effort to prevent the Commission from reducing the rates contained in the only rate schedule ever approved by the Commission, that is, rate schedule No. 1, appellee on April 18, 1952, filed its verified complaint in the circuit court of Rock Island county in which it alleged: "The rates set forth in said schedule —Illinois Commerce Commission No. 1—were, on August 7, 1951, and have ever since been, the minimum rates necessary to avoid confiscation of plaintiff's property used and useful in rendering Illinois intrastate electric and gas service to the public; and were on August 7, 1951, and have ever since been, fair, just, reasonable and non-discriminatory." There is nothing in this record to show any change in conditions from which this court would be justified in concluding that rates which were fair, just, reasonable and non-confiscatory on April 18, 1952, became confiscatory on January 5, 1953, the date the instant verified complaint was filed.

 In *Peoples Gas Light & Coke Co. v. Slattery*, 287 Ill. App. 379, the court cited and quoted with approval from *San Diego Land and Town Co. v. Nat. City*, 174 U. S. 739, and *Grand Trunk Ry. Co. v. Mich. R. R. Commission*, 232 U. S. 47, to the effect that the judiciary ought not to interfere with the collection of rates established under legislative sanction unless those rates were so plainly and palpably unreasonable as to make their enforcement equivalent to the taking of property for public use without just compensation; that the judiciary should only interfere when the case presents clearly and beyond all doubt such a flagrant attack upon the rights of property under the guise of regulations as to compel the court to say that the rates prescribed will necessarily

have the effect to deny just compensation; that if judicial interference is sought it must be clearly shown that the Commission has transcended the powers conferred upon it as courts are always reluctant to interfere with tribunals constituted by law to prescribe and enforce regulatory utility measures; that a court should not interfere while the Commission, to whom alone is delegated the power to fix rates, is investigating the matter unless the case presents clearly and beyond a doubt a flagrant case of confiscation.

Rate schedule No. 1 has been in effect for many years and, from affidavits found in this record, we are unable to conclude that the rates therein contained are so plainly unreasonable that their enforcement will result in confiscating the electric properties of appellee located in Illinois.

The order of the circuit court of Rock Island county granting the temporary injunction is reversed.

*Order reversed.*