Iowa-Illinois Gas & Electric Company, Plaintiff-Appellee, v. Walter T. Fisher et al., Constituting the Illinois Commerce Commission of State of Illinois, and Ivan A. Elliott, Attorney General of State of Illinois, Defendants-Appellants.

Gen. No. 10,626.

Opinion filed April 20, 1953. Rehearing allowed May 6, 1953. New opinion filed July 15, 1953. Rehearing denied October 6, 1953. Released for publication October 6, 1953.

IVAN A. ELLIOTT, Attorney General of State of Illinois, of Chicago, for appellants; MILTON MALLIN, Assistant Attorney General, WILLIAM R. MING, JR., Special Assistant Attorney General, ELLIS AMES BALLARD, and HAROLD BOWMAN, all of Chicago, of counsel.

CHARLES H. WHITMORE, of Rock Island, and ROBERT G. GRAHAM, of Moline, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

This is an appeal by the Illinois Commerce Commission, and the Attorney General from an order of the circuit court of Rock Island county, granting an injunction which restrained the Commission from enforcing a "temporary rate order" against the Iowa-Illinois Gas & Electric Company, a public utility furnishing natural gas and electricity to the Rock Island-Moline area in Illinois.

On April 10, 1952, the Commission entered a temporary order pursuant to section 36 of the Illinois Public Utilities Act (Ill. Rev. Stat., Ch. 111 2/3, par. 36 [1951; Jones Ill. Stats. Ann. 112.055]) directing the utility to effect a temporary reduction in its gas and electric rates to the Illinois public for a nine-month period beginning June 1, 1952. This temporary order resulted from an earlier review by the Commission of the utility's monthly and annual reports, wherefrom

217

it appeared to the Commission that the utility's earnings were excessive. On August 7, 1951, the utility had been cited to appear before the Commission on September 25, 1951, to justify its rates, and to show whether such rates did not return to the utility a profit in excess of a just and reasonable return on its property values used and useful in rendering service to the public in the State. In response to this citation the utility appeared on the date set, before an examiner of the Commission, and successive continuances thereafter were granted at the utility's request for time to prepare its case resisting the rate reduction.

Between September 25, 1951, and March 6, 1952, the utility furnished the Commission, at the latter's request, with various property-cost data, income statements and balance sheets, covering its operations, and the Commission directed its staff to investigate and study the same. Several hearings were held during this time, and the utility objected to any introduction into the record of the data theretofore furnished to the Commission as aforesaid. The utility did not produce any person to verify or lay any foundation for the admission of this data into evidence, whereupon it was advised by the Commission that whether or not such data was formally made a part of the record, it had nevertheless been submitted by the utility to the Commission and could form the basis for any action the Commission might properly take.

At the hearing on March 6, 1952, the utility offered no evidence and the Commission produced testimony by its chief of Finance & Accounts, as to facts ascertained from investigating the utility's data and records theretofore furnished. It was at this hearing that the eventual possibility of at least a temporary rate order being issued, was recognized by the utility. Following the direct testimony produced by the Commission, the

utility again had the matter continued until March 25, 1952, to prepare and present its cross-examination, which was done and the cross-examination was completed on March 26, 1952. Thereupon the Commission advised for the record that it proposed to proceed under section 36 of the Act with a temporary order requiring the utility to reduce rates. The proceeding at that point indicates a stipulation between the parties that this constituted statutory notice to the utility of the Commission's intention so to proceed. Another continuance was then granted the utility to present evidence against any order under section 36, which evidence was introduced on March 31, April 1 and April 2, 1952, after which the matter was again continued for further hearing on April 15, 1952.

On April 10, 1952, the Commission entered its temporary rate order hereinbefore referred to, and on April 18, 1952, the utility filed in the Rock Island circuit court a complaint for injunction restraining enforcement of the same. On the same day, i. e., April 18th, the utility filed with the Commission an application for rehearing, apparently under section 65 of the Public Utilities Act [Ill. Rev. Stats. 1951, ch. 111⅔, § 69; Jones Ill. Stats. Ann. 112.090], to urge objections to 'the rate order; and on May 12, 1952, it filed an application for rehearing as provided by the Act [Ill. Rev. Stats. 1951, ch. 111⅔, § 71; Jones Ill. Stats. Ann. 112.092]. Both of these applications were denied by the Commission on May 27, 1952.

On May 29, 1952, the circuit court issued, on the utility's own bond without other sureties, the injunction order from which the Commission here appeals.

After summons was served upon the defendants they appeared specially in the circuit court of Rock Island county and entered a motion for a change of venue, their reason being that the circuit court of Rock Island

did not have jurisdiction of the defendants and they moved the case be transferred, either to Cook or Sangamon county, the place where the Commerce Commission had its offices. This motion was overruled, then the defendants filed an answer claiming the same rights as they had formerly done in their motion for a change of venue.

It is now insisted that the circuit court erred in overruling a motion for a change of venue. Section 131 of Chapter 110 of Smith-Hurd Annotated Statute, the Civil Practice Act [1951; Jones Ill. Stats. Ann. 104.007], under the title of "Venue" provides as follows: "Except as otherwise provided in this Act, every civil action shall be commenced in the county where one or more defendants reside or *in which the transaction or some part thereof occurred out of which the cause of action arose, . . .*" [Italics added.] So far as we have been advised or able to ascertain, this exact question concerning venue has never been presented to our Supreme or Appellate Courts, but other state courts with similar statutes have passed upon the question. The question is, did any of the transactions involved in this suit take place in Rock Island county?

In the case of *Montana-Dakota Utilities Co. v. Public Service Commission of Montana* [111 Mont. 78], decided by the Supreme Court of Montana, and reported in 107 Pacific, second series at page 533. Practically the same facts arose in that case as the one we are now considering. In passing upon the merits of the case, the court uses this language: "Under this section our province is to determine in what county or counties the cause of action or some part thereof arose. On behalf of plaintiff it is contended that since the order complained of was made in Lewis and Clark county, where the office of the commission is located, at least a part of the cause arose in that county. We

think this contention loses sight of the real cause of the action. The cause of the action is the threatened enforcement or operation of the order in Valley and Phillips counties. It is not the mere making of the order, but the place where it is put in operation, that determines where the cause of action arose. Operation of the order is what is alleged will injure plaintiff. Section 3906, as amended by Chapter 56, Laws of 1937, provides that the orders 'shall become operative' within twenty days after their filing. It is the operation of the order that the action seeks to enjoin. True, the complaint also seeks to set aside the order, but only because its operation allegedly would injure plaintiff by confiscating its property. The operation of the order will be accomplished, if at all, in Valley and Phillips counties where the order is made applicable. It is our view that the cause of action arose in Valley and Phillips counties and not in Lewis and Clark county."

In the case of *Cecil v. Superior Court in and For Los Angeles County* [59 Cal. App. (2d) 793], a California case reported in 140 Pacific, second series page 125, the court after reviewing many cases cited for both the appellant and the appellee in the case concludes with this language: "The reasoning of these cases is sound and the conclusion is acceptable, in view of the fact that there has been no contrary holding in California. There is no escape from the conclusion that where a citizen is singled out by a state agency and proceedings are instituted against him and result in an order, the effect of which is to deprive him absolutely or conditionally of the right to do business, the proper county for redress under section 393, subd. (b), of the Code of Civil Procedure is the county in which he carries on the business and in which he will be hurt by enforcement of the order. It

is where the shaft strikes him, not where it is drawn, that counts. Process for the seizure of property operates when and where it is executed. Surely a cause of action does not arise in the county in which a state officer happens to affix his name to an order which is to become operative in another county."

■ There is no doubt that the Utilities Company is doing business in Rock Island, and the order issued by the Commerce Commission would take effect in that county. It is our opinion that part of the transaction in the present case, out of which the cause of action arose, occurred in Rock Island county, and the court properly held that it had jurisdiction to try the case.

■ It is strenuously insisted by the appellants that the circuit court of Rock Island county had no jurisdiction over the subject matter of this case, because the company had an adequate remedy at law and could not suffer irreparable injury, and under the Public Utilities Act the remedy of law was exclusive. In the case of the *Peoples Gas Light & Coke Co. v. Slattery,* 373 Ill. 31, very similar to this was before our Supreme Court. In that case we find this language:

"The points chiefly relied upon for reversal are that this suit was prematurely brought; that the circuit court lacked jurisdiction of the subject matter; that the court erred in holding section 68 of the Public Utilities act unconstitutional, and that the circuit court erred in the valuation of the company's property, the return it was entitled to, the amount it was actually earning and what constituted a confiscatory rate as distinguished from a fair and just rate." Later on in the opinion the court in holding that the action was not prematurely brought, and the circuit court did have jurisdiction to try the case stated: "The statute did provide a method in which the utility could be ade-

quately protected. The commission could have allowed schedule No. 19 to become effective by remaining in force thirty days and then have suspended it, in which case the statute affords relief at the end of an investigation. It was also within the power of the commission to allow temporary rates which the commission could control by special deposits, and by requiring a refund if an investigation proved they were not justified. If neither of these courses were authorized by the commission and confiscation took place, the question arises whether these means of preventing confiscation are exclusive and prevent any application to a court except by appeal as provided by statute, or whether, in a proper case, equity may interpose where the law does not adequately protect the utility or where the manner of administering a law brings about the injury. Jurisdiction cannot be taken away from the equity courts unless a statutory remedy is substituted which is adequate to prevent irreparable injury. Prior to the passage of the Public Utilities act, courts of equity had jurisdiction and power to enjoin enforcement of confiscatory rates. (City of Chicago v. Rogers Park Water Co. 214 Ill. 212.) The circuit courts of this State derive original jurisdiction in all equity cases from section 12 of article 6 of the constitution, and the legislature cannot validly limit those powers. (Stephens v. Chicago, Burlington and Quincy Railway Co. 303 Ill. 49; Howell v. Moores, 127 id. 67; Myers v. People, 67 id. 503; Frackelton v. Masters, 249 id. 30.) The power of issuing injunctions to prevent irreparable injury has long been an undoubted right of equity courts, of which they cannot be deprived, under the constitution, except in cases where a substitute remedy is provided that gives the same measure of relief."

223

The court then reviewed seven other cases which had been decided by the Supreme Court and concludes with the following: "This brief analysis discloses that none of these cases holds that under the Public Utilities act the remedy by appeal is exclusive, and in four of these cases, where the proceeding was started by a bill in chancery, no question was raised as to the right of a court of equity to hear the case."

■ It is our judgment that the suit was properly brought and the remedy that the Utilities Company pursued was a proper one. In *Peoples Gas Light & Coke Co. v. Slattery, supra,* the court after reviewing the figures presented both by the company and the Commission, decided that the commission figures were more worthy of credit than the company, and it is there stated: "This brings us to a consideration of the question of whether a net earning of five per cent justified the lower court in issuing an injunction. Had this been a proceeding to determine what a just and reasonable return would be, upon the valuation of the company's property, we would have had some doubt as to its adequacy. . . . Since we have no issue before us as to whether the return is just and reasonable, and only have determined whether the appellee established confiscation as alleged in the complaint, there is ample authority to sustain the proposition that under the present economic conditions a return of five per cent cannot be regarded as confiscatory."

■ The plaintiff filed its bill of complaint and was supported by nine affidavits. The defendants as heretofore stated, filed their special and limited appearance and made a motion to dismiss the complaint, stating that the circuit court of Rock Island did not have jurisdiction to try the case, and that no part of the transaction sued upon arose within the County of Rock Island. This motion was overruled and then the de-

fendants filed their verified answer denying practically all of the material allegations of the complaint. The plaintiff filed a reply and denied all of the new matter alleged in the defendants' answer. No evidence was heard and the court heard the case on the pleadings and affidavits. In the appellants' brief they argue that many of the charges in the complaint are conclusions, not allegations of fact. The proper way to raise this question in the trial court would be by motion. This, the defendants failed to do, but answered.

There is no denial of the truth of the affidavits, which the plaintiff filed in support of its contention. It is conceded by both parties that the new rate as established by the commission would reduce the earnings of the company at least $520,000 annually. It is claimed by the company that this would reduce their earnings to less than four per cent per annum on the fair value of their property in the State of Illinois. While this is denied in the answer, it is supported by the affidavits of the plaintiff. As before stated, the sole question raised upon the pleadings and affidavits filed by the plaintiff in the case and the trial court, was whether the rate of income was so low, it would be confiscatory as against the utility company. It is true that the Commission filed a schedule of what they contend were the earnings of other like companies in the State of Illinois, but the plaintiff in its reply denies that these rates are true, so there is nothing to support the defendants' contention that these were established rates.

■ The purpose of a preliminary injunction is to keep the parties and the things in litigation in status quo until there can be a full hearing upon the merits of the controversy. In the case of *Peoples Gas Light & Coke Co. v. Slattery, supra,* the court after reviewing all the evidence in that case, held that five per cent

could not be regarded as confiscatory, but it is to be remembered that the court in passing upon this question stated, that if it had been the province of the court to pass upon the reasonableness of whether five percent income was sufficient, the court said: "We would have had some doubt as to its adequacy."

 From a review of the pleadings in this case we cannot say that the holding of the trial court was erroneous, and the judgment appealed from is hereby affirmed.

*Affirmed.*

ANDERSON, J., concurs in the conclusion that the order appealed from in this case should be affirmed.

DOVE, J., specially concurring. The record in this case discloses that on August 7, 1951, the Commission issued a citation directing appellee to justify its rates. Between September 25, 1951, and March 6, 1952, the Utility furnished the Commission statements, data, and balance sheets. Hearings were had, and on April 10, 1952, the Commission entered its order directing the Utility to effect a temporary reduction in its gas and electric rates for a nine-month period beginning June 1, 1952. Instead of complying with this order, the Utility filed the instant complaint on April 18, 1952, and as a result of the action of the circuit court granting a temporary injunction on May 29, 1952, these temporary rates ordered by the Commission have never become effective. Had the order issued by the Commission on April 10, 1952, been complied with, the earnings of the Utility would have been reduced $520,000 annually. More than a year has now elapsed since this temporary injunction was issued. The rights of the parties will be determined by a final decree in this case, and in view of the verified pleadings and supporting affidavits disclosed by this record and by

226

the record in *Iowa-Illinois Gas & Electric Co. v. Perrine* [351 Ill. App. 195], Gen. No. 10684, in which an opinion is this day filed, I concur in the conclusion reached in this case that the status quo at the time the injunction was granted should be maintained until the rendition of such final decree.