CITIZENS UTILITIES COMPANY OF ILLINOIS, Plaintiff-Appellant, *v.* PHILIP R. O'CONNOR *et al.*, Defendants-Appellees.

Second District   No. 83—679

Opinion filed February 1, 1984.

Daniel J. Kucera, of Chapman & Cutler, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, *pro se*, and George A. Marchetti, of Moss & Bloomberg, of Bolingbrook (Hercules F. Bolos, Special Assistant Attorney General, and Edward P. O'Brien and Steven G. Revethis, Assistant Attorneys General, of counsel), for appellees.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Citizens Utilities Company of Illinois (Citizens) appeals from an interlocutory order denying its second motion for a temporary restraining order (TRO), which was entered on remand after this court found that the first appeal was premature. *Citizens Utilities Co. v. O'Connor* (1983), 116 Ill. App. 3d 369.

Citizens' complaint, filed with notice, seeks to enjoin the defendants, the members of the Illinois Commerce Commission (Commission) and the Attorney General, from enforcing an order entered on April 6, 1983, and from interfering with Citizens' charging and collecting the proposed increased rates. The order cancelled the suspended proposed rates, thereby denying any rate increase and leaving the existing rates in force. The village of Bolingbrook, defendant, was permitted to intervene in the trial court.

No pleadings were filed by the defendants in response to the complaint or the second motion for a temporary restraining order. No evi-

dence was taken. After hearing arguments the circuit court denied the motion, finding that Citizens would suffer irreparable harm "if the injunction is not granted, provided that plaintiff is otherwise entitled." The court, however, also found that Citizens had an adequate remedy at law, it had not shown a clear right requiring protection by *pendente lite* relief, it had not shown a reasonable likelihood of success on the merits, and the TRO would change the status quo.

Citizens contends that all of the criteria for the granting of a TRO have been satisfied and that it is entitled to relief on its showing that the Commission's order is confiscatory and unauthorized by law.

The standards for the granting of a TRO filed with notice are well established and will not be repeated here. (See *Citizens Utilities Co. v. O'Connor* (1983), 116 Ill. App. 3d 369, 378-79.) It has also been established in particular that injunctive relief against Commission rate orders is proper when the rate in force is confiscatory and unauthorized by law and that because of the delay in the administrative review process it is inadequate to prevent irreparable harm. See *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 44; *Sprague v. Biggs* (1945), 390 Ill. 537, 546; *Iowa-Illinois Gas & Electric Co. v. Fisher* (1953), 351 Ill. App. 215, 223-24.

■ The generally stated purpose of a TRO is to allow the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction or until the cause can be decided on the merits. (*Stocker Hinge Manufacturing Co. v. Darnel Industries Inc.* (1983), 94 Ill. 2d 535, 541-42; *Citizens Utilities Co. v. O'Connor* (1983), 116 Ill. App. 3d 369, 378.) The status quo to be preserved is the last, actual, peaceable and uncontested status which preceded the pending controversy. (*People ex rel. Edgar v. Miller* (1982), 110 Ill. App. 3d 264, 270.) Since the new rates proposed by Citizens did not go into effect, the status quo is the rate schedule previously in effect. The issuance of the TRO would, in effect, change the status quo by allowing Citizens' proposed rates to go into effect immediately. As such, Citizens must first establish the probability of its ultimate success on the merits. See *Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 486.

■ The case which must be made by the party who seeks a TRO, insofar as it relates to the probability of ultimate success on the merits, is not the same as the issue before the Commission or on judicial review in a rate proceeding. On judicial review of a rate order the issue is whether the rate allowed is just and reasonable. In the injunction case the issue is solely whether the rate sought to be enjoined is confiscatory. (*Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill.

31, 68.) The question of confiscation is a judicial one. 373 Ill. 31, 46.

Thus, this appeal essentially turns on whether a showing has been made that the present rate of return, acknowledged to be 6.5% for the purposes of this appeal, is confiscatory and whether the Commission refused the rate increase, not because of any finding that the existing rate was fair and reasonable, but as a penalty for alleged lack of compliance with previous orders of the Commission and thus unauthorized by law.

I

Citizens contends that the Commission order shows clearly on its face that the present rate of return is confiscatory. Since, on the present posture of the case, there has been no evidentiary hearing we must resolve this question purely under the complaint, which includes the Commission's order. As relevant, the findings in the order include:

"(8) the net original cost of Respondent's utility plant in service, used and useful in providing water and sewage service to the public as of December 31, 1982, is $25,449,400; to this should be added $119,500 for cash working capital, $79,800 for common plant, and $179,300 for materials and supplies; and as best as can be determined from the evidence in this record, $6,739,000 should be subtracted for accumulated deferred taxes resulting in an original cost rate base of $19,089,000;

(9) for the reasons set forth in the prefatory portion of this order, for purposes of this proceeding, Respondent's original cost rate base is the best available evidence of the fair value of its plant in service;

(10) Respondent's net operating income for the [1982] test year as adjusted for changes described above, is $1,243,800, which is the amount available to Respondent for return under its present rates; as best as can be determined from the evidence in this record, this operating income provides Respondent a return of 6.5% under its present rates;

(11) the management of Respondent has failed to improve Respondent's service in matters that are clearly within its control, such as, ensuring that meter readers have proper identification, that meters are read regularly, that excavations are properly repaired, that customer complaints are handled in a timely manner, and that adequate water pressure is maintained in its system;

(12) severe sewage backup problems exist and have existed for up to ten years in certain of Respondent's service areas; the

provision of such service presents a danger to its customers' health and safety in violation of Section 32 of the Public Utilities Act; the management of Respondent has failed to aggressively pursue eliminating these severe sewage backup problems;

(13) the management of Respondent has failed to comply with repeated directions from this Commission to record all its deferred income taxes on its books and records; as a result, ambiguity continues to exist as to Respondent's proper rate base, and proper amortization amounts of deferred taxes, thereby making calculation of expense and income imprecise;

(14) the failures of Respondent's management, as found in Findings (11), (12) and (13) herein, should not be rewarded with an increase in its authorized rate of return and an increase in rates; *** ."

■ The Commission's order reflects that it considered operating revenue, expenses and income. Operating revenue as found by the Commission amounted to $8,684,700. Operating revenue deductions included salaries, material supplies, rents, insurance, utility expenses, legal and regulatory expenses, depreciation and taxes, including Federal income taxes, totaling $7,440,900. This resulted in a net operating revenue of $1,243,800. Citizens argues that these figures reflect that the Commission took the worst possible view of their evidence. However, we do not have a sufficient record before us to determine whether in fact this is true, and we are not required to determine in this proceeding whether the computations of the Commission are against the manifest weight of the evidence. We conclude from the record before us that Citizens has not proved confiscation as a matter of law for the purpose of supporting its motion for a TRO.

Citizens argues that there is not any difference between a rate that is confiscatory and one that is "unreasonably low" so as to result in an unfair rate of return for the utility. We cannot agree. Our supreme court recognized the distinction in *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 68.

"It has been held that a reasonable rate is something other or higher than one not strictly confiscatory, the difference, if any, being determined with finality by the appointed officers of the State. *** '*** [T]here is a difference between a rate which is merely nonconfiscatory and one which is just and reasonable *** ' "

While a rate of return that is unreasonably low may in some instances be the same as a rate which is confiscatory, it does not necessarily follow that a failure to return an amount consistent with other

investments proves confiscation as a matter of law. Contrary to the argument of Citizens, this court has *not* held that an order is *per se* confiscatory because it imposes a rate of return below the yields of highest grade bonds. (See *Island Lake Water Co. v. Illinois Commerce Com.* (1978), 65 Ill. App. 3d 853, 857.) In *Island Lake* we were concerned with an appeal of a rate case under section 68 of the Public Utilities Act (Ill. Rev. Stat. 1981, ch. 111⅔, par. 72). We decided that the findings of the Commission did not support the order which it entered. In returning the case to the Commission we noted that a comparison of the 4.72% rate of return in 1976, a legal interest rate of 5%, and the yields of highest grade public utility and industrial bonds of approximately 8%, indicated an "unreasonably low, if not confiscatory" rate. (*Island Lake Water Co. v. Illinois Commerce Com.* (1978), 65 Ill. App. 3d 853, 858.) On remand we directed the Commission to properly support its order by considering comparable yields in determining a fair and reasonable rate, but we also directed that it support its finding that the proposed rates would exceed the value of service to the customer.

We also do not agree that *Chicago, Milwaukee & St. Paul Ry. Co. v. State Public Utilities Com.* (1915), 268 Ill. 49, 57, and *State Public Utilities Com. ex rel. Mitchell v. Chicago & West Towns Ry. Co.* (1916), 275 Ill. 555, 568, support Citizens' argument that the existing rate is confiscatory. Both cases stand for the proposition that in a review of a rate case a rate found to be insufficient to pay the proper operating expenses and to return a reasonable profit on investment deprives a utility of property without due process of law. Additionally, we have held, "Admittedly, a return which does not produce income sufficient to meet operating expenses is confiscatory, and rates yielding a very narrow margin above operating expenses may be confiscatory." (*Iowa-Illinois Gas & Electric Co. v. Perrine* (1953), 351 Ill. App. 195, 212.) This is not support for the position that the 6.5% rate of return is *per se* confiscatory.

We note that in cases relied upon by Citizens to justify injunctive relief against a rate order, none has proceeded upon the meager record which is before us here. In the leading case of *Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 47, the supreme court in upholding the order of the Commission noted that it had a "large" record before it, consisting of the abstract, final order of the Commission, an extensive master's report and detailed evidence bearing on the ultimate issues. In *Iowa-Illinois Gas & Electric Co. v. Fisher* (1953), 351 Ill. App. 215, 224-25, no evidence was heard, but in deciding the case on the pleadings the court had before it a verified com-

plaint and answer as well as nine affidavits supporting the complaint. In *Iowa-Illinois Gas & Electric Co. v. Perrine* (1953), 351 Ill. App. 195, 205-06, 209, the record before the court consisted of over 1,500 pages, including approximately 1,000 pages of statistical data, as well as a verified complaint and answer, accompanying affidavits, and the record of the *Fisher* case of which the court took judicial notice.

In the case before us, however, we have no proof of the actual return on the fair value of Citizens' property as reflected in the previously authorized rate of return. The Commission merely found that "as best as can be determined" the operating income provides a 6.5% return under its present rates. Citizens had indicated in its brief that it is willing to assume the 6.5% figure for purposes of this appeal, but that in a hearing on a permanent injunction it will be able to show that it is receiving only a .8% return. If so, we would have little doubt that the rate which produces so little a return would be confiscatory. However what the proof will be on a full hearing is irrelevant to a determination of whether the TRO was properly denied on the facts before the trial court. In sum, we conclude that the record before us is not sufficient to support Citizens' claim that it has shown confiscation as a matter of law.

## II

Citizens also argues that the Commission's order is unauthorized by law and should be enjoined because it denied rate relief solely as a penalty for alleged noncompliance with prior orders relating to the quality of service and the treatment of deferred taxes. The conclusions in the Commission's findings 11-14 are that the failure of Citizens to improve service and the failure to comply with repeated directions to record its deferred income taxes on its books "should not be rewarded with an increase in its authorized rate of return and an increase in rates." In the context of the entire order of the Commission we do not view this as a refusal to consider Citizens' proposed rate schedule or any intervening rate over the rate in effect purely because of the claimed noncompliance with prior orders.

We would agree that the Commission is not authorized by law to force compliance with prior orders by penalizing the utility "with a rate which will not return even the operating expenses, and might, in fact, prevent them from rendering any service at all." (*Chicago Rys. Co. v. Illinois Commerce Com.* (N.D. Ill. 1922), 277 F. 970, 977.) Citizens has not shown, however, for the purposes of this proceeding that the present rate renders it incapable of performing any service or that the present rate will not return even the operating expenses.

■ Premised on our conclusion that the rate which the Commission left in effect has not been shown to be confiscatory as a matter of law, we do not agree with the argument of Citizens that in determining whether the proposed rate schedule is fair and reasonable it must ignore quality of service and is limited to enforcing quality control by exercising its disciplinary powers under sections 75 and 78 of the Public Utilities Act. (Ill. Rev. Stat. 1981, ch. 111²/₃, pars. 79, 82.) Quality of service may be a relevant consideration in determining whether a proposed rate schedule is fair and reasonable, although it is not relevant to the question of whether a confiscatory rate has been established.

While the trial judge in his memorandum opinion indicated that, as a rule of law, quality of service cannot be considered in a rate-making case, we do not agree nor are we bound to. A reviewing court is not bound to accept the reasons given by the trial court for its judgment. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387.) While we agree that the Commission "need not" deny a reasonable rate increase pending service improvement (*Village of Apple River v. Illinois Commerce Com.* (1960), 18 Ill. 2d 518, 525), we find nothing in the Illinois authorities that prevents the consideration of that matter in order to determine whether a proposed rate increase results in a fair and reasonable return. In *Apple River*, the court noted that compliance with a prior order relating to quality of service was material to the extent that it "relates to the existing valuation of the company's property in order to determine whether or not the proposed rate increase results in a fair return ***." 18 Ill. 2d 518, 525.

We also do not agree with Citizens that *Apple River* calls for a different conclusion. The fact that the supreme court stated that the Commission need not deny a reasonable rate increase pending the service improvement does not mean that the quality of service cannot be considered in setting a reasonable rate of return. In fact, the *Apple River* court recognized that "the approval of proposed rate increases is necessarily related to the services offered ***" (18 Ill. 2d 518, 524-25) and that a balance must be maintained "between the rates charged by utilities and the services performed" (18 Ill. 2d 518, 523). We also indicated in *Island Lake Water Co. v. Illinois Commerce Com.* (1978), 65 Ill. App. 3d 853, 857, "that the public should not be required to pay more than the services rendered are reasonably worth."

We find persuasive the distinction made in *General Telephone Co. v. Corporation Com.* (1982), 98 N.M. 749, 652 P.2d 1200. In that case,

the Commission determined that an 11.91% rate of return was just and reasonable. Rather than instituting rates based on that figure, it imposed a penalty for inadequate service resulting in an 11.5% rate of return. The Supreme Court of New Mexico found this to be improper, concluding that once the Commission determined a fair and reasonable rate of return, it could not subsequently penalize a utility for reasons relating to the quality of service. Although the court held that "a regulatory commission has no authority to deny an increase in rates in an amount which it has first found to be just, fair and reasonable, by means of imposing a subsequent penalty for poor or inadequate service," it continued, "[h]owever, this does not preclude the [Commission] from properly considering in a rate proceeding, quality or inadequacy of service in determining, under the facts and circumstances in each particular case, what is a fair, just and reasonable rate of return to the utility." (98 N.M. 749, ____, 652 P.2d 1200, 1209.) The range of reasonableness in a case where quality of service is a factor requires a rate no more than the reasonable worth of the service supplied but not so low as to be confiscatory. *Arkansas Public Service Com. v. Continental Telephone Co.* (1978), 262 Ark. 821, 834-35, 561 S.W.2d 645, 652-53.

Thus we conclude that the Commission in considering the factor of quality of service as a basis for denying a rate increase in accordance with the proposed schedule was not acting in a way unauthorized by law.

■ Citizens also challenges the Commission's finding (13) that it had failed to comply with directions from the Commission to record all of its deferred income taxes on its books and records and that as a result "ambiguity continues to exist as to Respondent's proper rate base, and proper amortization amounts of deferred taxes, thereby making calculation of expense and income imprecise." Citizens first charges that the refusal to grant an increase based on this finding is a penalty which the Commission is unauthorized to inflict in a rate case. As we have previously noted, we do not view the finding as an assessment of a penalty but as a conclusion by the Commission that because Citizens had not so recorded its deferred income taxes the rate base was ambiguous and that in these circumstances the management should not be rewarded with an increase. Citizens disputes the fact that it did not either record or furnish to the Commission all the information necessary with regard to deferred taxes. On the limited record before us we cannot resolve this dispute. A utility, however, has the burden of showing that its proposed rates are reasonable and must produce sufficient evidence to meet that burden. (See *Central Il-*

*linois Public Service Co. v. Illinois Commerce Com.* (1955), 5 Ill. 2d 195, 211.) Moreover, a utility's rate base is reduced by the amount of income tax deferrals. (See *City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, 91-92.) It follows that, absent sufficient evidence to establish the rate base, the Commission cannot determine whether a particular rate is reasonable.

On the record before us we conclude that the preservation of the status quo is served by the trial court's exercise of discretion in favor of the denial of temporary relief. In our view, Citizens, as a prerequisite to affirmative mandatory injunctive relief which would change the status quo, has failed to establish the probability of its ultimate success on the merits. (*Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 486.) While a fair question is presented that the present rate of return is or may on further proof be less than fair and reasonable, Citizens has not shown, as it must, that it is confiscatory. (*Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 68.) Nor has it been shown that the Commission acted in a manner unauthorized by law. The judgment of the trial court is within the limits of its sound discretion, and since we find no abuse of discretion, we will not overturn it. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and HOPF, JJ., concur.