19 May 2000

No. 2--99--1434

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

LAKE COUNTY RIVERBOAT L.P., ) Appeal from the Circuit Court

by FRGP, L.P., by its General  ) of Lake County.

Partner, ) 

)

Plaintiff-Appellant, ) 

) 

v. ) No. 99--MR--793

)

ILLINOIS GAMING BOARD,  ) 

  ) 

Defendant-Appellee  )

  ) 

(Emerald Casino, Inc., f/k/a  ) 

HP, Inc.; The Village of  ) 

Rosemont; and West    ) Honorable

Central Municipal     ) John R. Goshgarian and

Conference, Intervening  ) Stephen R. Walter,

Defendants-Appellees).  ) Judges, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

This case comes to us after the supreme court issued a supervisory order directing this court to grant plaintiff's,  Lake County Riverboat L.P.'s (LCR), petition for leave to appeal pursuant to Supreme Court Rule 306(a)(4) (166 Ill. 2d R. 306(a)(4)).  On appeal, plaintiff challenges the trial court's order granting defendant, the Illinois Gaming Board (Board), and intervening defendants, Emerald Casino, Inc., f/k/a HP, Inc. (Emerald or HP), the Village of Rosemont (Rosemont), and the West Central Municipal Conference (WCMC) (collectively, intervenors), a transfer of venue from Lake County to Cook County.  After all of the briefs were filed, the intervenors moved to strike portions of plaintiff's reply brief, arguing that portions of the brief violated Supreme Court Rule 341(g) (177 Ill. 2d R. 341(g)) and that certain statements made in the brief are unsupported by the record.  We ordered the motion taken with the case.  After careful consideration, we deny the motion.

I. FACTS

The facts relevant to this case are as follows.  LCR sought to obtain a license for a riverboat gambling operation that it wished to locate on the Fox River in Lake County.  According to LCR, the license it sought to obtain became available when the Board, late  in June 1997, denied HP's renewal application for its East Dubuque riverboat gambling operation.  See 86 Ill. Adm. Code §3000.236 (1998).  Shortly after the denial, HP ceased all operations.  Under the terms of HP's license, it was required to maintain operations in order to retain its license.  Thus, according to LCR, HP's license expired by its own terms and was available to be awarded to another operator.

However, HP protested the Board's decision and exercised its right to a 
de novo
 administrative
 proceeding regarding the denial.  See 86 Ill. Adm. Code §§3000.236(d)(1), 3000.400, 3000.405 (1998).  This action kept HP's license in full force and effect.  

Late in December 1997, LCR submitted an application to obtain HP's license.  In February 1998, the Board denied LCR's application because there were no available licenses.  The Board determined that the denial was without prejudice because it did not render a judgment on the merits of the application.  Therefore, the Board permitted LCR to reapply for a license when one became available.  However, the Board also resolved that it was committed to a competitive application process in awarding any future licenses.  LCR did not challenge the Board's decision.  Rather, LCR stood by and awaited the Board's decision on HP's license.

In May 1999, the Board's hearing officer recommended against renewing HP's license because the renewal application failed to meet the requirements of the Riverboat Gambling Act (Act) (230 ILCS 10/1 
et seq.
 (West 1998)).  The hearing officer noted that HP admitted that it intended to relocate its gaming operations to Rosemont and, relying on an earlier Attorney General's opinion finding that relocation of HP's operations could not occur without the opportunity for other prospective operators to apply for the license (1995 Ill. Atty Gen. Op. ___, No. 95--011), the hearing officer recommended that HP reapply for the license as part of a competitive application process.  Before the Board acted upon the hearing officer's recommendations, the legislature passed Public Act 91--40, adding section 11.2 to the Act.  Section 11.2 provides:

"A licensee that was not conducting riverboat gambling on January 1, 1998[,] may apply to the Board for renewal and approval of relocation to a new home dock location authorized under Section 3(c) and the Board shall grant the application and approval upon receipt by the licensee of approval from the new municipality or county, as the case may be, in which the licensee wishes to relocate pursuant to Section 7(j)."  Pub. Act 91--40, §15, eff. June 25, 1999 (adding 230 ILCS 10/11.2).

HP was the only entity able to benefit from the passage of section 11.2.  As a result of the new legislation, in September 1999, the Board ruled that the hearing officer's recommendations were moot.  The Board therefore prepared to renew HP's license and approve its relocation to Rosemont under the new name of Emerald Casino.  At the time, LCR did not have an application pending before the Board.

Nonetheless, on October 8, 1999, LCR filed a complaint against the Board in the circuit court of Lake County.  The complaint sought injunctive relief and a declaratory judgment concerning the constitutionality of section 11.2 of the Act.  LCR alleged that section 11.2 was unconstitutional because it was special legislation and it violated due process and equal protection.  LCR also alleged that it suffered a constitutional injury because it made substantial efforts and expended substantial amounts of money to qualify for a license and the passage of section 11.2 absolutely precluded it from obtaining a license.  As a result, LCR sought to enjoin the Board from enforcing the allegedly unconstitutional provision.  The case was assigned to Judge John R. Goshgarian.

On October 19, 1999, the Board moved to transfer venue to Cook County.  The Board argued that, under section 2--103(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2--103(a) (West 1998)), venue was proper only in Cook County because that is where its principal office is located and because "the transaction which forms the basis of the Plaintiff's complaint [the enactment of an allegedly unconstitutional statute]" did not occur in Lake County.

The Board subsequently scheduled a meeting for October 26, 1999, to take action pursuant to section 11.2 of the Act.  The meeting was to take place at the Board's offices in Cook County.  In response, on October 22, 1999, LCR filed an emergency petition for a temporary restraining order (TRO) against the enforcement of section 11.2 of the Act.  Judge Goshgarian granted the TRO and scheduled a hearing on the issue of venue for October 28, 1999.

On October 27, 1999, Rosemont filed an emergency petition to intervene and, during a brief hearing, stated that it was joining in the Board's motion to transfer venue to Cook County.  Rosemont also filed its own written motion to transfer venue that incorporated, by reference, the Board's motion to transfer venue.  Rosemont's motion to transfer venue was accompanied by a memorandum of law raising arguments identical to those raised by the Board in its motion.

Following the October 28, 1999, hearing, Judge Goshgarian denied the Board's motion to transfer venue and scheduled a later hearing on intervention.  Judge Goshgarian reasoned that Lake County was a proper venue because LCR's preparatory actions caused legal positions to change, thereby amounting to a continuing "transaction" under the second prong of section 2--103(a) of the Code.  The Board did not appeal Judge Goshgarian's venue order, though it clearly had the right to seek leave to appeal.  See 166 Ill. 2d R. 306(a)(4).  Moreover, Rosemont's motion to transfer venue was technically not before the trial court because Rosemont was not yet a party to the litigation.

On November 1, 1999, Judge Goshgarian extended the TRO indefinitely.  Also in early November, WCMC and Emerald each filed separate petitions to intervene.  Along with the petitions, WCMC moved to dismiss LCR's complaint, and Emerald moved both to dismiss LCR's complaint and to transfer venue to Cook County.  WCMC did not file a motion to transfer venue and never indicated that it was joining in the other parties' motions. 

Judge Goshgarian heard the three petitions to intervene on November 16, 1999.  At the hearing, the following colloquy took place:

"THE COURT: What assurances can you give me there won't be any delays, any distractions from the core issue?

MR. QUINLAN [Intervenors' Counsel]: Your Honor, there have been no delays up until now. ***

* * *

THE COURT: Do you anticipate bringing in any other parties?

MR. DOCKTERMAN [Plaintiff's Counsel]: No, Your Honor.

MR. QUINLAN: We are here to represent our own interests.

THE COURT: How about any new issues?

MR. QUINLAN: Well, [Y]our Honor, the issues I think have been pretty well joined.  I don't know of any new issues. We have to see how the case develops.  In terms of issues within the confines of this case, we will not develop issues.

THE COURT: So far your pleadings are a two-edged sword.  You mirror what the Attorney General has already filed so, that leads me to believe that it won't affect delay.  Of course on the other hand, they are mirroring what the Attorney General has already done.

MR. QUINLAN: Your Honor, we can take positions that side with the Attorney General that are appropriate and we can take positions that don't side with the Attorney General.

THE COURT: 
Positions are fine.
  New issues I worry about."  (Emphasis added.)

Judge Goshgarian granted the petitions to intervene, ordering only that the intervenors not delay the proceedings in any way, consistent with the proceedings of November 16, 1999.  The order did not state that the intervenors were bound by earlier orders or judgments of the court.  

On November 19, Judge Goshgarian was suspended from the bench for unrelated reasons, and the case was transferred to the chief judge for reassignment.  Emerald and Rosemont immediately noticed their motions to transfer venue for a hearing before the new trial judge.  After a series of substitutions and recusals, the case was finally reassigned to Judge Steven R. Walter.

On December 20, 1999, Judge Walter held a hearing at which he revisited the venue issue.  At the outset of the hearing, Judge Walter stated that he understood that the intent behind the intervenors asking for a hearing on their venue motions was for the purpose of reconsidering Judge Goshgarian's earlier venue ruling.  He also noted that the venue motions filed by Emerald and Rosemont were still pending because the intervening parties were not granted leave to intervene until after Judge Goshgarian ruled on the Board's motion.  After hearing arguments, Judge Walter found that Judge Goshgarian's venue ruling was erroneous as a matter of law and ordered the case transferred to Cook County.  Following subsequent proceedings, this appeal followed.

II. DISCUSSION

Plaintiff's underlying constitutional challenge to section 11.2 of the Act is not before this court.  The sole issue on appeal is whether Judge Walter's order transferring venue to Cook County was proper. 
 

Plaintiff makes two arguments concerning the propriety of Judge Walter's venue ruling.  Plaintiff first contends that Judge Walter's venue ruling was erroneous because Judge Walter failed to adhere to the conditions of intervention established by Judge Goshgarian.  In support of this argument, plaintiff cites 
In re Marriage of Falstad
, 152 Ill. App. 3d 648 (1987).  In 
Falstad
, the court addressed the question of whether a successor judge erroneously overruled a prior judge's discretionary discovery order.  
Falstad
 does not involve intervening parties or conditions placed on such parties.  Nor does 
Falstad
 stand for the proposition that a successor judge must adhere to conditions of intervention placed on intervening parties.  
Falstad
 is simply unhelpful to plaintiff's position.  Moreover, in this case, Judge Goshgarian's order allowing intervention did not expressly state that the parties were bound by earlier orders or judgments.  See 735 ILCS 5/2--408(f) (West 1998); see also 
Peoples Energy Corp. v. Illinois Commerce Comm'n
, 142 Ill. App. 3d 917, 935-36 (1986).  Judge Goshgarian's order granting intervention simply prohibited the intervenors from delaying the proceedings in any way, consistent with the proceedings of November 16, 1999.  At the November 16, 1999, hearing Judge Goshgarian stated that he did not want new issues brought into the case but that "new positions" were okay.  This indicates that Judge Goshgarian contemplated the intervenors making motions to reconsider previous rulings.  We reject plaintiff's contention that Judge Walter ignored the conditions of intervention set by Judge Goshgarian.

Plaintiff's second contention is that because Judge Goshgarian's venue ruling was discretionary Judge Walter had no authority to reconsider the ruling absent a showing of a substantial change in circumstances or presentation of additional facts or new law warranting modification.  A trial judge may review, modify, or vacate an interlocutory order at any time before final judgment, even if the original order was entered by another trial judge (
Balciunas v. Duff
, 94 Ill. 2d 176, 185 (1983)) and  regardless of whether the order was immediately appealable (see 
Kemner v. Monsanto Co.
, 112 Ill. 2d 223, 240-42 (1986); see also 
McClain v. Illinois Central Gulf R.R. Co.
, 121 Ill. 2d 278, 286 (1988)).  However, the power of a successor judge to review an interlocutory order of a prior judge in the same case is not limitless.  In circumstances where the interlocutory order involved the exercise of the prior judge's discretion, a successor judge may overturn the order only where new matter is brought to light and there is no evidence of judge shopping.  
McClain
, 121 Ill. 2d at 287.  On the other hand, where the successor judge finds that the previous interlocutory order is erroneous as a matter of law, the successor judge, absent evidence of judge shopping, has the power to 
correct the previous order regardless of the existence of new matter.  
Towns v. Yellow Cab Co.
, 73 Ill. 2d 113, 121 (1978).

An order fixing or transferring venue is an interlocutory order.  See 
City of Elgin v. County of Cook
, 257 Ill. App. 3d 186, 200 (1993).  Here, there is no evidence of judge shopping.  Judge Walter was administratively assigned to the case after Judge Goshgarian was temporarily suspended from the bench.  Judge Walter had the right to reconsider Judge Goshgarian's interlocutory venue ruling either (1) if the ruling was discretionary and new matter justified reconsideration, or (2) if the ruling was erroneous as a matter of law, regardless of the existence of new matter.  

With the exception of the introduction of the intervening parties, no new matter was presented on reconsideration of Judge Goshgarian's venue ruling.  Hence, Judge Walter's decision to reconsider venue was proper only if Judge Goshgarian's ruling was erroneous as a matter of law.  The issue thus narrows to whether Lake County is an improper venue.

Being sued in a proper venue is an important statutory privilege.  
Bucklew v. G.D. Searle & Co.
, 138 Ill. 2d 282, 288 (1990).  The purpose behind venue statutes is to protect defendants against a plaintiff's arbitrary selection of forum.  
Heldt v. Watts
, 329 Ill. App. 408, 414 (1946).  Venue statutes restrict proper venue to places that are convenient either to the defendant or to potential witnesses.  
Bucklew
, 138 Ill. 2d at 288-89. 
 A defendant has an absolute right to insist upon a proper venue, provided that it is done in a timely manner.  
Williams v. Illinois State Scholarship Comm'n
, 139 Ill. 2d 24, 52-53 (1990).  If the defendant shows that venue is improper, the trial court must transfer the case to a proper venue.  
Blakey v. Commonwealth Edison Co.
, 52 Ill. App. 3d 454, 456 (1977).

On appeal from a venue ruling, the issue of whether a particular venue is proper raises a mixed question of law and fact.  See, 
e.g.
, 
ServiceMaster Co. v. Mary Thompson Hospital
, 177 Ill. App. 3d 885, 891-95 (1988) (reviewing the facts of the case to determine whether certain actions were merely incidental to the transaction out of which the cause of action arose and then determining as a matter of law that venue is proper in a breach of contract action where the contract is signed and executed).  This court reviews questions of law 
de novo
 (see 
P.R.S. International, Inc. v. Shred Pax Corp.
, 184 Ill. 2d 224, 234 (1998)), and reviews questions of fact for manifest error (see 
Suburban Bank v. Bousis
, 144 Ill. 2d 51, 63-64 (1991)).  Here, there is no dispute concerning the facts upon which Judge Walter's venue ruling was based, so we proceed under a 
de novo
 review.

Section 2--103(a) of the Code (735 ILCS 5/2--103(a)(West 1998)) governs venue in suits against state agencies.  See 
Knott v. Illinois Racing Board
, 198 Ill. App. 3d 364, 366 (1990).  Under section 2--103(a), a suit must be brought either (1) in the county in which the agency's principal office is located (residence prong) or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose (transaction prong).  735 ILCS 5/2--103(a) (West 1998).

Venue may be proper in more than one county.  See, 
e.g.
, 
ServiceMaster
, 177 Ill. App. 3d at 890; see also 
Superior Structures Co. v. City of Sesser
, 277 Ill. App. 3d 653, 657 (1996) (noting that the transaction prongs of sections 2--103(a) and 2--

101 are interpreted identically).  For example, where a state agency has its principal office in one county but signs a contract to purchase office supplies in another county, venue is proper in both counties.

It is undisputed in this case that, under the residence prong of section 2--103(a), Cook County is a proper venue because that is the county in which the Board has its principal office.  The dispute in this case, therefore, centers on the transaction prong of section 2--103(a).

When there is more than one proper venue, a trial court's ruling on a motion to transfer venue is necessarily based on 
forum non conveniens
 principles.  See
 
Superior Structures
, 277 Ill. App. 3d at 657.  A 
forum non conveniens
 ruling involves a considerable exercise of discretion by the trial court.  See 
Williams
, 139 Ill. 2d at 41.  However, a trial court is vested with 
forum non conveniens
 discretion only after it has made the legal determination that there is more than one proper venue and the venue in which plaintiff chose to file the action is one of the proper venues.  See 
Superior Structures
, 277 Ill. App. 3d at 657-

58.  It is this principle on which we focus in this case.  We must decide, under the undisputed facts of this case, whether Lake County is an improper venue for plaintiff's cause of action.  If Lake County is an improper venue, then Judge Walter's venue ruling must be affirmed.

Plaintiff argues that Lake County is a proper venue because the preparation and mailing of its license application in Lake County and the work it performed in Lake County to make it a viable applicant were integral parts of the transaction out of which its constitutional challenge to section 11.2 of the Act arose.  According to plaintiff, these preparatory acts conferred upon it the status of applicant and, by virtue of that status, it suffered a constitutional injury in Lake County upon passage of section 11.2.  Thus, plaintiff argues that its Lake County "transactions" gave rise to its constitutional challenge to section 11.2 of the Act.  We disagree.

Under transactional venue principles, two dependent variables must be analyzed to determine whether a particular venue is proper.  Those variables are (1) the nature of the cause of action and (2) the place where the cause of action springs into existence.  
Guthrie v. Montana Department of Health & Environmental Sciences
, 172 Mont. 142, 147, 561 P.2d 913, 916 (1977).  The place where a transaction or some part thereof occurs causing an action to spring into existence is the place where "any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving" as part of the cause of action.  
People ex rel. Carpentier v. Lange
, 8 Ill. 2d 437, 441 (1956).  This is generally the place where the parties' direct dealings occurred while in an adversarial position or where events occurred that altered the parties' legal relationship.  
Williams
, 139 Ill. 2d at 69.

In 
Williams
, the supreme court was faced with a challenge to the Illinois State Scholarship Commission's (ISSC) practice of filing student loan default actions only in Cook County, irrespective of the county in which the borrower resided or the county in which the loan agreement was signed.  ISSC argued that under transactional venue Cook County was a proper venue because preparatory work and approval of the loan documents were performed in ISSC's Cook County office.  According to ISSC, these acts were critical to each loan because in their absence the loans would never have been made.  Hence, ISSC asserted that, in the context of transactional venue, the preparatory work and approvals were sufficient parts of the loan transaction out of which the default actions arose.  The 
Williams
 court disagreed with ISSC.  The court found that no direct adversarial dealing between the borrowers and ISSC occurred in Cook County and that ISSC's preparatory acts did not alter the legal relationship of the parties.  The court stated:

"It was the signatures on the approved [loan] agreements which actually altered the positions of the parties--plaintiffs would have no obligations to pay back the loans, and ISSC would not be obligated to guarantee the loans if each class member had not signed the agreements.  Thus, not even the mere act of approving the loan alters the positions of the parties involved, or obligates either party in any way."  
Williams
, 139 Ill. 2d at 69-70.

Thus, the 
Williams
 court held that preparatory or preliminary acts, without more, are insufficient to invoke transactional venue.  
Williams
, 139 Ill. 2d at 69-70.

Here, plaintiff points to nothing in the record showing that there were direct dealings between it and the Board that occurred in Lake County.  The record indicates that all of plaintiff's dealings with the Board occurred in Cook County.  For example, plaintiff filed its application in Cook County, plaintiff's representatives attended Board meetings in Cook County, and the Board denied plaintiff's application in Cook County.

Plaintiff's unilateral efforts to qualify for an owner's license are also insufficient to invoke tranactional venue (see, 
e.g.
, 
Chicago Film Enterprises v. Jablanow
, 55 Ill. App. 3d 739, 742 (1977)(unilateral acts of a plaintiff are insufficient to invoke personal jurisdiction over a defendant because "only the acts of [a] defendant are relevant"); 
Bucklew
, 138 Ill. 2d at 290 (venue requires a greater quantum of activity than that necessary to invoke personal jurisdiction)). 
  Plaintiff's preliminary acts in attempting to qualify for an owner's license did not change the legal relationship between it and the Board.  The Board had nothing to do with plaintiff's preliminary acts and did not force plaintiff to undertake efforts to qualify for an owner's license.  The fact that plaintiff unilaterally expended substantial amounts of money and made significant efforts to qualify for a license was a risk that any entity wishing to obtain an owner's license would have to take.  Plaintiff's completion and mailing of its application in Lake County are simply preparatory acts like those of the ISSC in 
Williams
.  They are, in themselves, insufficient to invoke transactional venue.  The Board's denial of plaintiff's application without prejudice did not alter the legal relationship of the parties.  Denial of the application placed both plaintiff and the Board in the same positions they were in prior to the filing of the application.

Even if plaintiff's preliminary acts might be sufficient in some context to invoke transactional venue, the nature of plaintiff's cause of action poses another significant problem for its position that Lake County is a proper venue.  The nature of plaintiff's cause of action was a request for declaratory judgment concerning the constitutionality of section 11.2 of the Act.  Requests for declaratory judgments are neither legal nor equitable, and proper venue depends on the issues involved and the relief sought.  
Kenilworth Insurance Co. v. McDougal
, 20 Ill. App. 3d 615, 617 (1974).  None of the acts that plaintiff cites in its attempt to invoke transactional venue give rise to the issue of the constitutionality of section 11.2.  Plaintiff's actions in Lake County were aimed simply at becoming an applicant for a riverboat gambling operator's license, which proved to be nonexistent.  Any acts giving rise to a constitutional challenge to section 11.2 of the Act did not and would not occur in Lake County.

Plaintiff nonetheless urges that Lake County is a proper venue because it suffered "constitutional injury" upon passage of section 11.2 and that it "felt" the constitutional injury in Lake County because that is the location of its principal offices and that is where deprivation of its rights to refile an application and to operate a riverboat casino would occur.  In support of this argument, plaintiff cites 
Iowa--Illinois Gas & Electric Co. v. Fisher
, 351 Ill. App. 215 (1953).  In that case, the Iowa--Illinois Gas & Electric Company sought a restraining order in the circuit court of Rock Island County against the Illinois Commerce Commission from enforcing a rate reduction order.  At some point during the litigation the Commerce Commission moved to transfer venue to either Cook or Sangamon County, the places where the Commerce Commission had its offices.  The utility argued that venue was proper in Rock Island County under transactional venue principles.  The trial court agreed with the utility and denied the motion.  The Commerce Commission appealed.

On appeal, the Commerce Commission argued that denial of its motion to transfer venue was improper because no part of the transaction out of which the cause of action arose took place in Rock Island County.  This court disagreed with the Commerce Commission.  Holding that Rock Island County was a proper venue, this court stated:

"There is no doubt that the Utilities Company is doing business in Rock Island, and the order issued by the Commerce Commission would take effect in that county.  [Therefore,] part of the transaction in the present case, out of which the cause of action arose, occurred in Rock Island County."  
Iowa-

-Illinois Gas
, 351 Ill. App. at 222.

This court noted that " 'It is where the shaft strikes ***, not where it is drawn, that counts.' "  
Iowa--Illinois Gas
, 351 Ill. App. at 221-22, quoting 
Cecil v. Superior Court
, 59 Cal. App. 2d 793, 799, 140 P.2d 125, 129 (1943).

Here, plaintiff's reliance on 
Iowa--Illinois Gas
 is misplaced because 
Iowa--Illinois Gas
 is factually distinguishable from this case.  In 
Iowa--Illinois Gas
, the utility was a licensed utilities provider in Rock Island County and, therefore, the Commerce Commission's rate reduction order directly affected the utility's business in that county.  Here, plaintiff was not a licensed riverboat casino operator in Lake County at the time it allegedly suffered constitutional injury.  Indeed, plaintiff has never held a riverboat casino operator's license.  Also, unlike the utility in 
Iowa--Illinois Gas
, plaintiff in this case had no direct dealings with the state agency at the time it filed its cause of action.  At the time it filed its action, plaintiff did not have an application pending before the Board, and it does not have an application pending now.  Plaintiff was waiting for the Board to take action on HP's renewal application before it refiled its application.  Finally, any action taken by the Board pursuant to section 11.2 of the Act would certainly not occur in Lake County, because the Board regularly acted upon renewal applications in Cook County.

Even if plaintiff had a pending application when it brought its complaint against the Board, the transactions out of which the cause of action arose did not and would not occur in Lake County.  Section 11.2 of the Act was not passed in Lake County, nor would section 11.2 be enforced in Lake County.  An injunction against the Board acting pursuant to section 11.2 of the Act was enforceable only in Cook County because that is where the Board regularly functions.  Accordingly, we hold that Lake County is not a proper venue for plaintiff's cause of action.  Judge Walter properly exercised his power to reconsider Judge Goshgarian's legally erroneous venue ruling.  Transfer of the case to Cook County was not improper.

As a final matter, we must comment on the excessive use of footnotes in the parties' briefs.  
Our supreme court rules mandate that in appellate briefs "[f]ootnotes, 
if any
, shall be used 
sparingly
."  (Emphasis added.) 177 Ill. 2d R. 341(a).
  Strict adherence to supreme court rules regarding appellate briefs is critical to the expeditious and efficient administration of justice by this court.  
People v. Stork
, 305 Ill. App. 3d 714, 717 (1999).  This court may impose sanctions, including striking portions of briefs, for failure to comply with supreme court rules.  155 Ill. 2d R. 375; see also 
Geers v. Brichta
, 248 Ill. App. 3d 398, 400 (1993).

Plaintiff's opening brief has 11 footnotes, and its reply brief has an additional 16 footnotes.  Defendant's brief has 14 footnotes, and the intervenors' brief has 13 footnotes.  
The voluminous information contained in these footnotes more properly belongs in the body of the text.
  All of the footnotes are single spaced and, in plaintiff's briefs, the footnotes are set in minuscule type.  This is not using footnotes "sparingly" and is inexcusable given the unequivocal language of Supreme Court Rule 341(a).
  We admonish the parties for failing to comply with Rule 341(a), and we strongly discourage the use of footnotes in future briefs submitted to this court.

III. CONCLUSION

For the foregoing reasons, the order of the circuit court of Lake County transferring venue to Cook County is affirmed.

Affirmed.

THOMAS and HUTCHINSON, JJ., concur.