# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Board of Education of Nippersink School District 2 v. Koch*, 2012 IL App (2d) 120132**

---

| | |
|---|---|
| Appellate Court Caption | THE BOARD OF EDUCATION OF NIPPERSINK SCHOOL DISTRICT 2 and THE BOARD OF EDUCATION OF RICHMOND-BURTON COMMUNITY HIGH SCHOOL DISTRICT 157, Plaintiffs-Appellants, v. CHRISTOPHER A. KOCH, State Superintendent of Education, and THE ILLINOIS STATE BOARD OF EDUCATION, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-12-0132 |
| Filed | September 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant State Board of Education failed to meet its burden of proving that the venue selected by plaintiff consolidated school districts, the county in which the districts were located, was improper for plaintiff's *mandamus* action to compel the Board to use the proper formula in calculating the districts' funding. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 11-MR-263; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

G. Robb Cooper and Ericka J. Thomas, both of Ottosen Britz Kelly Cooper Gilbert & DiNolfo, Ltd., of Naperville, for appellants.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellees.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Hudson and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      This case involves a dispute between the plaintiffs, the Board of Education of Nippersink School District 2 and the Board of Education of Richmond-Burton Community High School District 157, and the Illinois State Board of Education (State Board) regarding the proper amount of general state aid that should be paid to the plaintiffs under article 18 of the School Code (105 ILCS 5/18-1 *et seq.* (West 2010)). The only issue before us at this point, however, is the proper venue for that dispute.

¶ 2      The plaintiffs, coterminous school districts that share a common superintendent, assert that they are entitled to receive funding calculated under section 18-8.1 of the School Code (105 ILCS 5/18-8.1 (West 2010)), which contains a funding formula for coterminous districts based on average daily attendance in each district. On November 29, 2010, Dr. Dan Oest, the superintendent of both districts, contacted the State Board to inquire whether section 18-8.1 applied to the plaintiffs and, if so, to ask that the plaintiffs' state aid for the past three years be recalculated using that formula. Dr. Oest repeated this request in writing on December 3, 2010. In a letter refusing the request, the State Board asserted that section 18-8.1 was rendered "obsolete" following the 1998 enactment of section 18-8.05 of the School Code (105 ILCS 5/18-8.05 (West 2010)). Thereafter, the parties' attorneys exchanged e-mails on the topic, the upshot of which was that the State Board would not reconsider its decision.

¶ 3      On September 2, 2011, the plaintiffs filed in McHenry County a complaint for *mandamus* against the defendants, the State Board and its superintendent, Christopher A. Koch. In their complaint, the plaintiffs alleged that they were coterminous districts that shared the same superintendent; they were entitled to funding based on average daily attendance in each district, pursuant to the formula in section 18-8.1 of the School Code; they were required to file claims for funding with the State Board; and the State Board had acted contrary to law in refusing to calculate the plaintiffs' funding based on the proper formula. The plaintiffs attached to their complaint (a) the December 3, 2010, correspondence that Dr. Oest sent from his office in Richmond to the State Board at its Springfield office, seeking recalculation of

the state aid under the section 18-8.1 formula; (b) a letter dated December 21, 2010, sent from a senior budget analyst at the State Board's Springfield office to Dr. Oest in Richmond, denying Dr. Oest's demand; and (c) printouts of the e-mails exchanged between the parties' attorneys. The plaintiffs sought to require the defendants to: recalculate the amounts owed to them for the past four fiscal years using the section 18-8.1 formula; pay the plaintiffs the difference; and use the section 18-8.1 formula in calculating their state aid in the future.

¶ 4 Six weeks after the suit was filed, the defendants filed a motion to transfer venue, arguing that venue was not proper in McHenry County under section 2-103(a) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-103(a) (West 2010)). As relevant here, that provision states:

"Actions must be brought against a public, municipal, governmental or quasi-municipal corporation in the county in which its principal office is located or in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-103(a) (West 2010).

The defendants argued that McHenry County was neither the site of their principal office nor a county in which any part of the transaction at issue arose. They sought to have the action transferred to Sangamon County, the location of their principal office. In support of their motion, they argued that the only relevant "transaction" that gave rise to the *mandamus* suit was the State Board's denial of Dr. Oest's demand for recalculation. As that letter was sent from Springfield, the defendants argued that Sangamon County was the place where the cause of action arose.

¶ 5 In their response, the plaintiffs conceded that the defendants' principal office was located outside of McHenry County (although they noted that the defendants maintained a regional office in McHenry County). The plaintiffs argued that venue was proper in McHenry County, however, under the transactional prong of the venue statute. The plaintiffs argued that, under that prong, courts look to "(1) the nature of the cause of action and (2) the place where the cause of action springs into existence." *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 952 (2000). Here, the cause of action was for *mandamus*. To prevail in such an action, the plaintiffs would have to prove among other things a clear right to the relief requested, which would require proof that the two school districts were coterminous and shared a superintendent, that they applied for general state aid for the relevant years, that they received the wrong amounts of such aid, and that they requested recalculation of the aid. The plaintiffs suggested that they would present local witnesses such as Dr. Oest to establish these facts.

¶ 6 The plaintiffs further noted that the place where the cause of action sprang into existence was determined by considering where " 'any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that the plaintiff has the burden of proving.' " *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 68 (1990) (quoting *People ex rel. Carpentier v. Lange*, 8 Ill. 2d 437, 441 (1956)). The plaintiffs argued that most of these factors were not present in this case–there were no negotiations and no agreement was signed–but the matters that they had the burden of proving occurred in McHenry County. In

addition, the School Code's requirements regarding general state aid were supposed to be performed or carried out in McHenry County.

¶ 7　　Finally, the plaintiffs relied heavily on the argument that, in determining proper venue in a suit against governmental actors, a court should look to where the effects of the governmental action would be felt: " '[i]t is where the shaft strikes ***, not where it is drawn, that counts.' " *Iowa-Illinois Gas & Electric Co. v. Fisher*, 351 Ill. App. 215, 221-22 (1953) (quoting *Cecil v. Superior Court*, 140 P.2d 125, 129 (Cal. Dist. Ct. App. 1943)). The plaintiffs argued that "where the shaft would strike," *i.e.*, where the effects of the grant or denial of their request for recalculation of their funding would be felt, was in McHenry County. To this, the defendants countered that the effects of the *mandamus* action would be felt solely in Sangamon County, as the recalculation sought by the plaintiffs would occur in the State Board's office there. The defendants emphasized that any additional funding due would be paid from Sangamon County; the plaintiffs emphasized that the funding would be received and used in McHenry County for schools there.

¶ 8　　After considering the parties' briefs and hearing oral argument on the venue issue, the trial court ruled as follows:

> "Well, I'm going to grant the [motion] to transfer venue.
>
> I think the argument the way the shaft strikes is equally applicable to both here and Sangamon County because there're [*sic*] going to be acts here, but there're also going to be acts there. And I don't believe that there's any evidence otherwise that the transaction–there's any evidence supporting the argument that the transaction actually touches McHenry County other than the effects are going to be felt here. But it's not going to be felt only here. And under the circumstances in this case, I don't–I think Sangamon County is the proper venue. So I will grant the motion."

The plaintiffs filed a petition for leave to appeal, which we granted.

¶ 9　　　　　　　　　　　　　　　　ANALYSIS

¶ 10　　　　　　　　　　　　　　General Principles

¶ 11　　To obtain a change of venue, a defendant must establish that the original venue selected by the plaintiff was improper. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155 (2005). In meeting this burden, the defendant must point to specific facts showing a clear right to a transfer of venue and cannot rely on conclusory statements. *Id.* Thus, the sole issue in this appeal is whether the defendants carried their burden of proving that venue was not proper in McHenry County.

¶ 12　　A trial court's ruling on a motion to transfer venue is reviewed under a two-part standard. A trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. However, its legal conclusions are reviewed *de novo*. *Id.* at 154. Further, where the facts are undisputed, the case as a whole is subject to *de novo* review. *Id.* Here, the parties agree that the relevant facts are undisputed (they dispute only the significance of those facts). Accordingly, we review the case *de novo*.

¶ 13　　When the issue is whether venue in a particular county is proper because the "transaction

or some part thereof" from which the cause of action arose occurred there, a court considers two factors: "(1) the nature of the cause of action and (2) the place where the cause of action springs into existence." *Lake County Riverboat*, 313 Ill. App. 3d at 952. In evaluating the case under these factors, we must bear in mind that " '[t]ransaction' has been defined to include every fact that is an integral part of a cause of action." *Reichert v. Court of Claims*, 327 Ill. App. 3d 390, 395 (2002) (citing *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 617 (1974)); see also *Williams*, 139 Ill. 2d at 69-70 (considering whether events that occurred were "integral" to the cause of action).

¶ 14                                     The Nature of the Cause of Action

¶ 15     The first factor–the nature of the cause of action–may weigh more heavily in some cases than others; for example, in a suit concerning land or an injury that occurred in a particular location. In such cases, the proof that the plaintiff must present may involve knowledge of the local geography or the testimony of local witnesses. We view this factor as being somewhat less significant here, where the suit is a *mandamus* action that primarily raises a legal question about whether the State Board is properly carrying out its statutory duties. *Cf. Lake County Riverboat*, 313 Ill. App. 3d at 954 (where the nature of the cause of action is a request for declaratory judgment, the action is "neither legal nor equitable, and proper venue depends on the issues involved and the relief sought").

¶ 16     The only section 2-103(a) venue case we have found involving a *mandamus* action is *Southern & Central Illinois Laborers' District Council v. Illinois Health Facilities Planning Board*, 331 Ill. App. 3d 1112 (2002), relied upon by the plaintiffs. In that case, the Illinois Health Facilities Planning Board (Board) had issued a permit allowing the construction of a hospital. The permit required the hospital to fairly resolve "local union issues," among other things. *Id.* at 1114. The union representing hospital employees notified the Board of a National Labor Relations Board finding that the hospital had engaged in unfair labor practices relating to the "local union issues," and it requested action by the Board. The Board put the matter on the agenda for one of its meetings, but at that meeting it allowed two hospital representatives to speak while preventing the union representative from speaking. The union filed a *mandamus* action seeking to compel the Board to initiate a proper proceeding (a "contested case" under the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2000))).

¶ 17     The union filed the *mandamus* action in Williamson County, the location of the hospital. The Board moved to transfer venue of the action to Sangamon County, the location of its principal office. The union argued that the "transaction" out of which the *mandamus* suit arose was its initial complaint about the violations of the construction permit and that the outcome of the action would affect the rights and employment conditions of its members in Williamson County. The trial court denied the motion to transfer venue, and the Board appealed.

¶ 18     The reviewing court held that the motion was properly denied because venue was proper in Williamson County:

     "Although the procedures defendant allegedly violated in not conducting a contested case

-5-

involved a transaction that occurred in Cook County [the Board meeting at which the union representative was not allowed to speak], the procedures were to be performed for the sole benefit of determining events and actions that occurred in Williamson County." *Southern & Central*, 331 Ill. App. 3d at 1118.

The court ruled that certain facts relating to Williamson County–the Board's issuance of the permit to build in that county and the alleged unfair labor practices that occurred there–were not "incidental" but "central" to the plaintiff's cause of action. Accordingly, venue was proper in Williamson County.

¶ 19 The defendants argue that *Southern & Central* is not good law because the reviewing court stated that it was applying the abuse-of-discretion standard of review. The supreme court rejected the abuse-of-discretion standard in *Corral*, 217 Ill. 2d at 154, and held that the bifurcated standard discussed above (manifest weight for factual determinations, *de novo* for the significance of those facts and ultimate venue analysis) was the proper standard for reviewing section 2-103(a) venue rulings. *Corral* therefore abrogated *Southern & Central*'s holding regarding the applicable standard of review. The defendants argue that, since *Southern & Central* wrongly applied a deferential standard of review, its ultimate affirmance of the trial court's finding that venue was proper in Williamson County cannot be relied upon.

¶ 20 The defendants' argument is, in general, correct, although a close reading of *Southern & Central* raises some doubt about whether the reviewing court actually applied a deferential standard, inasmuch as the court discussed at length the factors applicable in a venue analysis and considered each factor in light of the specific facts of the case. All of this analysis appears very much as if the court were conducting an independent evaluation of whether venue was proper in Williamson County rather than simply checking to see whether the trial court abused its discretion. Moreover, even if the ultimate holding of *Southern & Central* is disregarded, its reasoning remains sound. The court's improper application of the abuse-of-discretion standard of review does not undermine its conclusion that, in determining where venue is proper, it is relevant to consider the location of those persons who will particularly be affected by the governmental action sought via *mandamus*.

¶ 21 Applying that same principle here leads to the conclusion that the goal of this *mandamus* action–the recalculation of the plaintiffs' state aid–would "be performed for the sole benefit of" McHenry County schools. In addition, just as in *Southern & Central*, some of the facts relating to the county where the suit was filed, including school attendance and district boundaries, are integral to the plaintiffs' claim.

¶ 22 The defendants also cite *Reichert*, 327 Ill. App. 3d at 390, as being on point. However, *Reichert* is not good law. The supreme court vacated the appellate court's judgment and directed the trial court to dismiss the suit because it did not have jurisdiction to review the Court of Claims nonfinal order appealed by the plaintiff. *Reichert v. Court of Claims*, 203 Ill. 2d 257, 263 (2003). The appellate court opinion in *Reichert* cited by the defendants is thus a nullity. Moreover, the *certiorari* action in *Reichert* differs from a *mandamus* action in important respects. As a part of a *mandamus* action, a plaintiff may be required to produce evidence showing the "right to the relief requested." (Internal quotation marks omitted.)

*People ex rel. Glasgow v. Kinney*, 2012 IL 113197, ¶ 7. By contrast, in a *certiorari* action, the issue is whether, based solely on the record developed in the previous tribunal, that tribunal "proceeded according to applicable law." *Reichert*, 203 Ill. 2d at 260. It thus involves only legal issues–no new evidence may be presented. The plaintiff in a *certiorari* action therefore has little or no valid interest in the convenience of witnesses, unlike the plaintiff in a *mandamus* action. *Reichert* is neither good law nor apposite.

¶ 23    Thus, to the extent that "the nature of the action" bears on the issue of venue, this factor supports a determination that this *mandamus* action was properly brought in McHenry County.


¶ 24                    Where the Cause of Action Sprang Into Existence

¶ 25    The second factor in determining venue–where the cause of action sprang into existence–considers among other things where " 'any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that the plaintiff has the burden of proving.' " *Williams*, 139 Ill. 2d at 68 (quoting *Lange*, 8 Ill. 2d at 441). Courts should also consider where any direct dealings between the parties took place or where events occurred that altered the legal relationship of the parties. *Id.* at 69; *Lake County Riverboat*, 313 Ill. App. 3d at 953.

¶ 26    The difficulty is in applying these factors here. This is not a contract case, in which the parties engaged in negotiations over terms or executed an agreement. One could argue that the School Code imposes a duty similar to a contractual duty requiring the State Board to provide school districts such as the plaintiffs with the funding to which they are entitled. The plaintiffs contend that, viewed this way, the State Board's duty was to be "performed" in McHenry County by providing appropriate state aid there. Moreover, they note that they have statutory duties of their own with respect to the calculation of their state aid, which require them to gather attendance information from McHenry County schools, compile that data in the correct form, and transmit it from their offices in McHenry County to the State Board. The defendants, however, view any duty they owe as being "performed" solely in Sangamon County, where their employees calculate the state aid that is owed to each district. There is some case law to the effect that, where obligations under a contract are performed by the parties in two counties, venue is proper in both. See *ServiceMaster Co. v. Mary Thompson Hospital*, 177 Ill. App. 3d 885, 891 (1988). However, we view the contract analogy as of limited relevance here.

¶ 27    There were no direct dealings between the parties here (*i.e.*, no face-to-face meetings or travel by one party to the other party's location), only an exchange of correspondence via traditional mail and e-mail, which took place equally in both counties. As to "events that altered the legal relationship of the parties," the defendants contend that this occurred when the State Board wrote the letter denying Dr. Oest's demand for recalculation, which took place in Sangamon County. The plaintiffs, however, argue that the key event was Dr. Oest's demand for recalculation, written in McHenry County, which served notice upon the defendants that the plaintiffs would not accept the previous funding calculations.

¶ 28    On this point–where events occurred that "altered the legal relationship of the parties"–both parties cite *Williams*, a 1990 supreme court decision. *Williams* involved a class action against the Illinois State Scholarship Commission (ISSC) filed by defaulting student loan borrowers who did not live in or obtain their loans in Cook County, seeking to enjoin the ISSC from filing all of its Illinois collection actions in Cook County. The ISSC argued that venue over the collection suits was proper in Cook County because it prepared loan documents and officially "approved" the loan guarantees in its Cook County office.

¶ 29    The supreme court rejected this argument on several grounds. First, it noted that there was no evidence unequivocally establishing that, in fact, loan documents were prepared in Cook County. *Williams*, 139 Ill. 2d at 68. More importantly, however, the ISSC's preparation of the loan documents and its approval of the loans were not "integral" to the loan transaction; they were simply preliminary steps. Rather, the crucial events were the execution and performance of the loan agreements, both of which occurred in the counties where the borrowers lived or where the lenders were located. *Id.* at 69. The supreme court noted that there was no legal relationship or dealings between the borrowers and the ISSC before that point. As the "mere act of approving the loan" did not alter the legal positions of the parties, that could not be considered an integral part of the loan transaction. *Id.* at 69-70.

¶ 30    Under *Williams*, courts must focus on the event or events that are "integral" to the transaction or that change the legal relationship between the parties. The defendants argue that here the only event that was "integral" to the transaction that gave rise to the plaintiffs' *mandamus* action, and the event that altered the parties' relationship, was the State Board's denial of Dr. Oest's demand for recalculation, which occurred outside of McHenry County. Of course, the plaintiffs argue that it was Dr. Oest's initial demand that altered the parties' relationship by seeking a different aid calculation process.

¶ 31    Neither of these arguments is particularly persuasive. Indeed, it does not appear that the parties' legal relationship was ever actually "altered" in the manner described in *Williams*. Rather, the parties remained in essentially the same legal relationship. The State Board had the obligation to provide proper funding to the plaintiffs both before and after the exchange of correspondence (the demand letter and its rejection). The plaintiffs had the duty to gather and submit the information necessary to calculate that funding both before and afterwards. To the extent that there has been any change in the parties' relationship, we lean slightly toward the view that the change was initiated by Dr. Oest's demand letter rather than the State Board's refusal (which simply restated its original position). Overall, however, we do not find any significant alteration in the parties' relationship. Rather, we view the factor of "where the action sprang into existence" as evenly balanced between events occurring within McHenry County and those occurring outside.

¶ 32                            Where the Effects Will Be Felt

¶ 33    Perhaps because the above venue factors are fairly evenly balanced, both the parties and the trial court focused primarily on the "effects" test applied in *Fisher*. The facts in *Fisher* were somewhat similar to those in this case. A utility company serving the Rock Island-Moline area sued a governmental entity (the Illinois Commerce Commission (Commission))

for an injunction to prevent the Commission from enforcing a temporary rate order that would reduce the rates charged by the utility. The utility brought suit in Rock Island County, its home county, and the Commission sought to transfer the case to either Cook or Sangamon County (counties where it had offices). The trial court denied the motion and eventually entered the injunction requested by the utility. The Commission appealed, arguing in part that the motion to transfer venue had been wrongly denied, because venue was not proper in Rock Island County. As in our case, the issue was whether "some part of the transaction" occurred in Rock Island County.[1]

¶ 34    Lacking any Illinois case law on point, the *Fisher* court turned to foreign case law, including a case from the Montana Supreme Court involving a similar suit by a utility against a state body (*Montana-Dakota Utilities Co. v. Public Service Comm'n*, 107 P.2d 533, 534 (Mont. 1940)), and a California case in which a business owner sought to forestall the implementation of a court order obtained by a state agency (*Cecil*, 140 P.2d at 129). In both of these cases, the courts focused on the place where the order or rule was to be put into effect, not where it was issued, in concluding that at least part of the transaction from which the cause of action arose took place in the plaintiffs' home counties. See *Fisher*, 351 Ill. App. at 220-21. The *Fisher* court adopted this same approach, quoting the "where the shaft strikes" language from *Cecil*. It then held that venue was proper in Rock Island County because part of the transaction out of which the cause of action arose occurred there, in that the plaintiff utility was based there and the Commission's order would take effect there. *Id.* at 222.

¶ 35    The defendants here argue that, for several reasons, *Fisher*'s "effects" test is not a proper consideration in determining venue. First, they note that section 2-103(a) makes no reference to where the effects of state action will be felt. This is not a particularly persuasive argument, in that section 2-103(a) does not refer explicitly to *any* of the factors traditionally used to determine where part of the transaction giving rise to the cause of action arose, such as where negotiations took place, where an agreement was formed or was to be performed, the nature of the cause of action, or where direct dealings occurred. Rather, all of these factors–the use of which is well established–were adopted by courts interpreting venue statutes. Thus, the lack of an explicit statutory reference to the "effects" test is no bar to applying it, if it is otherwise in line with the applicable law.

¶ 36    Next, the defendants note that one of our more recent cases, *Lake County Riverboat*, distinguished *Fisher* and declined to apply the "effects" test. See *Lake County Riverboat*, 313 Ill. App. 3d at 955. We did so in that case because, in *Fisher*, the rate reduction order issued by the Commission "directly affected the [plaintiff] utility's business" in Rock Island County, and therefore venue was proper in that county. *Id.* In *Lake County Riverboat*, however, the plaintiff did not operate any business in Lake County, the county where it had

---

[1]*Fisher* was decided under an earlier version of the general venue statute, now codified as section 2-101 (735 ILCS 5/2-101 (West 2010)), but the transactional venue analysis is the same under both that provision and section 2-103(a), the public corporation venue provision applicable in this case. See *Superior Structures Co. v. City of Sesser*, 277 Ill. App. 3d 653, 657 (1996).

sued the Illinois Gaming Board. Further, the plaintiff had no direct dealings with the Gaming Board at the time it filed suit (it hoped to apply for a casino license if one were made available, but did not actually have any application pending). For both of these reasons, we held that the *Fisher* "effects" test was not applicable in *Lake County Riverboat*. *Id.*

¶ 37 In comparing the facts of *Fisher* and *Lake County Riverboat* to the case before us, we find *Fisher* more similar. Like this case, *Fisher* involved a dispute between a plaintiff entity that provided essential services to the public and a state body that controlled the plaintiff's funding in certain ways. As in *Fisher*, the present dispute involves the terms under which an ongoing legal relationship will be conducted, not a material change to that relationship itself. And unlike *Lake County Riverboat*, the denial of the demand for recalculation "directly affects" the plaintiffs' ongoing operations in their home county. Thus, we see no reason why the *Fisher* "effects" test would not be an appropriate consideration in determining venue. In this case, the application of that test supports the plaintiffs' argument that venue of the action was proper in McHenry County, because the plaintiffs conduct their business in McHenry County and the effects of any recalculation of general state aid (or the lack thereof) will be felt there. Accordingly, at least part of the transaction out of which the cause of action arose occurred in McHenry County.

¶ 38                                                    CONCLUSION

¶ 39 As we noted at the outset, the party seeking a change of venue bears the burden of showing that venue is not proper in the county in which the action was filed. *Corral*, 217 Ill. 2d at 155. The trial court erred in granting the motion to transfer venue, in part because it wrongly placed this burden on the plaintiffs, requiring them to show why McHenry County was a proper venue rather than requiring the defendants to show why it was not. In addition, the trial court failed to make any explicit finding regarding the threshold issue of whether venue was proper in McHenry County, although its comments suggest that it viewed the relevant "transaction" underlying the *mandamus* suit and the effects of that suit as occurring in both McHenry and Sangamon counties–a finding that would support the conclusion that venue was proper in McHenry County. As our review is *de novo*, we leave aside these errors by the trial court and simply consider whether the defendants met their burden.

¶ 40 We conclude that they did not, for the following reasons. First, the nature of this *mandamus* action suggests that the plaintiffs may be required to present evidence regarding McHenry County school attendance and district boundaries. Second, the cause of action sprang into existence equally in McHenry County and elsewhere. Finally, the effects of the governmental action or inaction will be felt in McHenry County. As all of these factors support venue in McHenry County, the defendants did not carry their burden of showing that venue was not proper there.

¶ 41 For all of the foregoing reasons, we reverse the January 5, 2012, order of the circuit court of McHenry County that granted the defendants' motion to transfer venue and we remand the cause for further proceedings.

¶ 42 Reversed and remanded.